**SIEGEL et al. v. RAGEN et al.**

No. 9988.

United States Court of Appeals Seventh Circuit.

Feb. 28, 1950.

Rehearing Denied March 20, 1950.
Writ of Certiorari Denied June 5, 1950.
See 70 S.Ct. 1015.

Luis Kutner, Chicago, Ill., for appellants.

Ivan A. Elliott, Attorney General, Henry F. Tenney, Chicago, Ill., for appellees.

Before KERNER, FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

In this case an amended complaint was filed in the United States District Court for the Northern District of Illinois, Eastern Division, on behalf of Harry Siegel, Robert Harp and Maurice Meyer as plaintiffs, all of whom were and are inmates of the Illinois State Penitentiary.

The defendants named were Joseph E. Ragen, Warden of the Illinois State Penitentiary; T. P. Sullivan, Director of the Department of Public Safety of the State of Illinois; William Ryan, Roy Carlton and Andrew Stach, who are said to be captains of the guards of the Illinois State Penitentiary. Jurisdiction is based on the Federal Civil Rights Act, U.S.C.A., Title 8, §§ 41–56.

The defendants are charged with having conspired with other persons to the plaintiffs unknown to commit certain acts charged "with particularity" in the complaint, and to have perpetrated, in furtherance of said conspiracy, the particular acts in the complaint alleged. The conspiracy charged and the acts said to have been done in furtherance thereof, are alleged to have occurred within the three-year period immediately preceding the filing of the complaint, and to have been done within the jurisdiction of the Court.

Defendants interposed a motion to strike the amended complaint and to dismiss the same.

The order of the District Court dated June 17, 1949, which this appeal seeks to reverse, provides as follows: "Defendants' motion to dismiss the complaint is therefore granted as to plaintiffs Meyer and Siegel, and claim is hereby dismissed as to them. Defendants' motion to strike is granted as to all matters alleged by plaintiff Harp except wherein it is alleged that he suffered serious bodily injury."

On July 14, 1949, on motion of Harry Siegel, Robert Harp and Maurice Meyer, through their attorney, an order was procured from the District Court permitting them, as plaintiffs, to prosecute an appeal in forma pauperis. On the same day their notice of appeal was filed in the District Court.

Appellants' attorney, also on July 14, 1949, filed a motion for instructions relative to prosecuting appeal on behalf of co-plaintiff, Robert Harp. In his motion the attorney represented that he had been notified by letter and also by wire that he was dismissed as counsel for said Robert Harp. He stated in the same motion that in his opinion Robert Harp was not acting in his own best interests, but was acting under duress; that said Harp was in fear of bodily injury from the defendant Ragen, or from subordinates acting under his direction; that the revocation of authority to act as attorney was the result of fear of bodily injury that had been threatened against Harp. On this motion a judge of the District Court, other than the trial judge, entered an order directing that the attorney represent Robert Harp in the prosecution of his appeal.

The record on appeal was filed on August 24, 1949.

On January 19, 1950, Robert Harp, co-appellant filed in this court his petition stating that he had been, ever since July 1, 1949, endeavoring to have said attorney discharged from further representation of his interests. Attached to Harp's petition in this court was a copy of a petition to the trial judge, dated June 23, 1949, which he was told had been filed but on which no action had ever been taken. Also attached was a copy of a letter to the attorney in question, dated July 1, 1949, discharging him as Harp's representative; also letters to the clerk of the District Court of Illinois, Northern District, Eastern Division, dated July 15, 1949; and to Otto Kerner, Jr., United States Attorney for the Northern District of Illinois, Eastern Division, and a letter dated July 20, 1949, to the Attorney General of the State of Illinois. All of the attached letters insisted that said attorney be discharged and that Harp be allowed to withdraw as an appellant in this appeal. From other exhibits attached to the petition filed by Harp in this court, it appears that he has appealed for assistance to the Postmaster General of the Unit-

ed States, to two members of the United States Senate from the State of Michigan, and to an associate justice of the United States Supreme Court.

On January 19, 1950, this court ordered that Robert Harp be allowed to withdraw from this appeal.

The only matter now before the court is therefore the action of the trial court in dismissing the amended complaint as to the plaintiffs Harry Siegel and Maurice Meyer.

So far as the plaintiff Maurice Meyer is concerned, the amended complaint alleges that through close study he has become an expert as to the law of "habeas corpus"; that the defendant Ragen abolished "a legal department" which the plaintiff claims to have set up within the penitentiary after having been directed to establish such a department by a judge of the United States District Court; that this plaintiff was placed in solitary confinement because a document was found in his cell of which paper he claims to have no knowledge; that the plaintiff was placed in segregation after a dining room disturbance in which he claims he took no part; that Ragen confiscated a typewriter which belonged to plaintiff personally, thereby depriving him of his legal right to assist in the prosecution of this action and an appeal to the Supreme Court of Illinois; that this plaintiff's health is impaired as a result of his segregation confinement; that this plaintiff deposited certain valuables with Ragen for which he was given a one cent receipt; that Ragen has mismanaged and misused the Prisoners' Amusement Fund; that defendants maintain a system of isolation confinement, which is cruel and inhuman, for minor infractions of prison rules of which rules the inmates have no knowledge.

The plaintiff, Harry Siegel, complains that the defendant Ragen wrongfully accused him of stating to other inmates that he, Ragen, had stolen $20,000 from the Prisoners' Amusement Fund; that as a result Ragen had plaintiff placed in segregation for several months and then transferred to Menard Prison; that the transfer was cruel and inhuman and imposed to inflict humiliation, agony and mental torture; that this prisoner likewise deposited valuables with Ragen for which he was given a one cent receipt; and that Ragen has mismanaged and misused the Prisoners' Amusement Fund.

The amended complaint further charges generally that Ragen has not publicly read the prison rules as required by statute; has not credited earned interest to a trust fund which is alleged to be the separate property of the inmates of the institution; that the officials of the prison have had watches and automobiles repaired without cost and without compensating the inmates who did the work; that certain inmates have been granted special privileges; that inferior food has been furnished and that the officials appropriate the best food for themselves.

The Federal Civil Rights Act provides, 8 U.S.C.A. § 43, that every person who under color of state law subjects any person within the jurisdiction of the United States to the deprivation of the rights, privileges or immunities secured by the Constitution and laws of the United States shall be liable to civil action by the party injured.

It is on this section that plaintiffs base their claim for relief according to the allegations of their amended complaint. They ask that the defendants be required to cease and desist from the aforesaid acts; they pray that an accounting be had; each asks for damages in the sum of $100,000 and that the court find that malice is the gist of the action.

We would be forced to extend this opinion to unreasonable length, if we undertook to criticize the obvious formal defects of the alleged complaint. The vital question here is: does the pleading state facts which give the plaintiff ground for relief in a federal court? If they succeeded in establishing every fact which they have charged, would it be within the power of the District Court of the United States to grant them the relief they pray or to award the damages they seek?

In other words, the vital question on this record is: are the rights or privileges of which plaintiffs claim to have been de-

prived by Ragen, rights or privileges secured by the Constitution of the United States?

█ Obviously the right to practice law or to maintain a law department within the confines of a state penitentiary is not a right secured by the Constitution of the United States.

The allegation that a federal judge directed that a law department be set up within the walls of the Illinois State Penitentiary is simply incredible. Only the Supreme Court of Illinois has the power to license persons to practice law within the limits of that State. In re Day, 181 Ill. 73, 54 N.E. 646, 50 L.R.A. 519. Conviction of a felony would be an absolute bar, which would prevent even the Supreme Court from admitting an applicant to the practice of law, in any part of that State while under conviction.

█ The Government of the United States is not concerned with, nor has it power to control or regulate the internal discipline of the penal institutions of its constituent states. All such powers are reserved to the individual states.

The laws of Illinois relating to the management, discipline and administration of its penal institutions will be found in Chapter 108 of Smith Hurd's Illinois Annotated Statutes and in chapter 127, sec. 53 of said statutes. Under the provisions of the latter statute the powers and duties of commissioners, wardens, chaplains, and other employees of the Illinois State Penitentiary were transferred to the Department of Public Welfare. And by Act of May 16, 1941, Sec 55(a) chap. 127, Smith Hurd's Ill.Ann.Stat., such powers and duties were confided in the Department of Public Safety.

By virtue of sec. 21, chap. 108, Smith Hurd's Ill.Ann.Stat., the Department of Public Safety shall take charge of all money and other property which may be brought to the penitentiary by the convicts, and cause the same on receipt thereof to be entered among the receipts of the prison, which money and other articles, whenever the convict from whom the same are received shall be discharged from the penitentiary, or the same shall be otherwise legally demanded, shall be returned by said department to such convict or other person legally demanding the same.

Section 110 of the same Act of the General Assembly, as provides that the department shall have full power to transfer prisoners from one division to another as often as the nature of the individual case or the exigencies of administration may require.

Moreover, sec. 10 of said chapter 108 provides that the Department of Public Safety shall inquire into any improper conduct which is alleged to have been committed by the warden or any other officer or employee of the penitentiary, and for that purpose may issue subpoenas and compel the attendance of witnesses and the production before it of writings and papers. By section 13 of the same chapter, it is made the duty of the Department to prescribe the articles of food and the quantities of each kind which shall be provided for the convicts.

It does not appear that plaintiffs have ever attempted to secure redress for their alleged grievances through Illinois law, or have requested an inquiry into the alleged misconduct of the defendant Ragen.

They should be advised that it has been the law in their State since 1827, that, as the Supreme Court said in People v. Russell, 245 Ill. 268, 91 N.E. 1075: "There follows from the judgment (of conviction of felony) a loss of civil rights, which practically deprives the convict of his citizenship unless restored thereto by a pardon. There remained to him after the judgment of the court is satisfied only his mere personal rights, by virtue of which his life, his liberty, and his property are protected from deprivation. He has become an alien in his own country, and worse, for he can be restored only as a matter of grace, while an alien may acquire citizenship as a matter of right."

█ The Civil Rights Act of the United States was passed to implement the 13th, 14th and 15th Amendments to our Federal Constitution.

The 14th Amendment does not empower Congress to legislate on matters within the domain of the States' powers, nor to legislate against the wrongs and personal actions of individuals within the State nor to regulate and control the conduct of private individuals. In re Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835. It is plain* that the Federal Civil Rights Act was never designed nor intended to redress the breach by a trustee of his equitable duties to the trust beneficiaries.

The plaintiffs have stated no facts which would entitle them to relief under the Federal Civil Rights Act. The order of the District Court dismissing their complaint is therefore affirmed.