## UNITED STATES ex rel. YARIS v. SHAUGHNESSY.

## UNITED STATES ex rel. DOYLE v. SHAUGHNESSY.

United States District Court
S. D. New York.

April 28, 1953.

Blanch Freedman, New York City, for relator Harry Yaris.

Ira Gollobin, New York City, for relator Charles Doyle.

Edward Lumbard, Jr., U. S. Atty. Southern District of New York, New York City, for respondents.

DIMOCK, District Judge.

These are two habeas corpus proceedings in which the relators allege ill treatment in their former place of detention and illegality of their present place of detention. The relators are aliens presently held pending deportation proceedings, at the Federal Detention Headquarters in New York City which serves as the common jail for federal offenders. They have been charged in those proceedings, among other things, with membership in the Communist Party. In these habeas corpus proceedings they do not raise any question as to the deportation proceedings or the denial of bail to them but object only to their treatment in the course of their detention.

15. 46 Am.Jur., pp. 257-8.

For a period before April 7, 1953, both relators were held in custody by the immigration officials at Ellis Island and they claim that their treatment there was "discriminatory, abusive, punitive and unlawful." More specifically they allege that they and other persons charged with membership in the Communist Party were segregated from others on Ellis Island; that they were kept in close confinement; that they were required to eat in a screened-off portion of a storage room filled with excess tables and chairs which was hot and stuffy; that they were not afforded the same recreational facilities as other detainees; and that the privileges afforded other detainees were, in whole or in part, denied to them.

With respect to the Federal Detention Headquarters they allege, aside from asserting that their detention there is illegal, that their removal there was "an aggravation of the discriminatory, abusive, punitive and unlawful treatment" to which they have been subjected and that it is a jail for the housing of persons charged with or convicted of crime.

■ The relator Doyle does not deny in his traverse the allegations of the return that he received the same food and was accorded the same privileges as other detainees except for the segregation and different recreation facilities; or the allegation that he entered an area at Ellis Island in which he was not permitted to be. Such allegations must be taken as true as against Doyle. 28 U.S.C.Supp.V § 2248. He alleges, however, that on April 5, 1953 the weather was very warm and that it was oppressive and difficult to eat in the storage room; that on April 6, 1953, after a complaint about the room brought no satisfaction, he refused to eat there; and that on the following day, he was transferred to the Federal Detention Headquarters.

The relator Yaris denies all of the allegations of the return referring to the circumstances of his detention at Ellis Island and I will, for the purposes of the following discussion, deal with Doyle's writ as though his denial was as extensive as that of Yaris.

Taking the allegations of the relators most favorably for them, they present a case where they have real cause for complaint about their treatment. Their position as detained persons subjects them, in the nature of things, to direction by those in whose custody they are. Their allegations raise the difficult and important question whether their treatment by their custodians is subject to court review. It is a very similar question to that which arises with respect to those who are imprisoned as punishment for crime.

It is hard to believe that persons awaiting deportation or even persons convicted of crime are at the mercy of the executive department and yet it is unthinkable that the judiciary should take over the operation of the places of detention and prisons. There must be some middle ground between these extremes. The courts have proceeded very slowly toward defining it.

■ We know on the one hand that the the courts will interfere if the treatment of prisoners amounts to deprivation of constitutional rights. For instance, the Supreme Court has held that additional punishment may not be imposed in violation of the Constitution upon a person validly convicted of murder. In re Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835. A prison regulation restricting prisoners' right to apply for habeas corpus has been declared invalid. Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034. Habeas corpus affords a remedy to a convict who was prevented by prison authorities in violation of the 14th Amendment from appealing his conviction. Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453; Dowd v. U. S. ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215. Courts in habeas corpus proceedings have given consideration to allegations by prisoners that they have been subjected to cruel and unusual punishment prohibited by the 8th Amendment of the Constitution. Ex parte Pickens, D.C.Alaska, 101 F.Supp. 285; In re Pinaire, D.C.N.D.Tex., 46 F.Supp. 113. See Sweeney v. Woodall, 344 U.S. 86, 93, 73 S.Ct. 139 (dissenting opinion of Douglas, J.).

On the other hand, the courts have held that convicts complaining of the treatment that they have received may not require the courts to superintend their treatment.

Shepherd v. Hunter, 10 Cir., 163 F.2d 872; Sarshik v. Sanford, 5 Cir., 142 F.2d 676. See Taylor v. United States, 9 Cir., 179 F. 2d 640; Dayton v. Hunter, 10 Cir., 176 F. 2d 108, certiorari denied 338 U.S. 888, 70 S.Ct. 184, 94 L.Ed. 545. Further it has been said that courts have no power to interfere with the conduct of the prison or its discipline, Platek v. Aderhold, 5 Cir., 73 F.2d 173, 175, at least in habeas corpus proceedings, Snow v. Roche, 9 Cir., 143 F.2d 718, certiorari denied 323 U.S. 788, 65 S.Ct. 311, 89 L.Ed. 629.

■ If the only thing involved were the incarceration of the aliens in the Federal Detention Headquarters I would not be called upon to interfere. The Immigration and Nationality Act of 1952, § 242(c), 8 U.S.C. § 1252(c), authorizes the Attorney General to arrange for appropriate places of detention for aliens, such as these relators, who are in his custody. The provision of that subsection authorizing the Attorney General to build or acquire other facilities does not exclude the utilization of jails, for this authorization is given only "[w]here no Federal buildings are available or buildings adapted or suitably located for the purpose are available for rental * *." If anything, this provision would encompass the use of Federal jails. The fact that the current regulations, 17 F.R. No. 247, Dec. 19, 1952, page 11469 et seq., do not, as the former ones did, specifically state, that jails may be used does not seem significant. So far as my research discloses, there is no current regulation dealing with the type of detention facilities in cases such as these and counsel have not referred me to any.[1] The omission of such a regulation should not prevent the detention of an alien in what would otherwise be an appropriate place of detention. The relators do not allege any facts showing that the Federal Detention Headquarters building is not an appropriate place of detention and I am not prepared to rule that as a matter of law a federal jail is not such a place. In a closely analogous case, the Court of Appeals of this Circuit held that the same jail involved in these writs was a suitable place of detention for an alien despite the absence of explicit statutory authority for such detention or any provision in the regulations for it. U. S. ex rel. Russo v. Thompson, 188 F. 2d 244, certiorari denied 341 U.S. 954, 71 S. Ct. 1005, 95 L.Ed. 1376.

Whatever may be the technical import of relators' papers, however, I cannot shut my my eyes to the fact that they complain of what they allege to be a studied course of mistreatment which began at Ellis Island and continues in their present incarceration in a common jail. Rather than apply technical rules to cut their case down to one or more well pleaded parts of this course of mistreatment I shall assume that they have brought before the court the question of the propriety of each and all of the acts complained of and that these proceedings are appropriate for the decision of those questions.

■ Even making that assumption I am clear that, whatever may be the point at which the courts should interfere with the treatment of aliens by the executive, it has not been reached in these cases. See Dayton v. McGranery, D.C.Cir., 201 F.2d 711, 712. On their own story, relators have not made out a case of abuse so serious as to require such interference. Whatever may be the court's views upon treatment such as has been alleged by the relators, the treatment as alleged was not so far below the standards of ordinary humanity as to permit or require judicial interference.

The writs are dismissed.

1. Counsel for the Government contend that the old regulations continue in effect in these cases by virtue of § 405(a) of the Immigration and Nationality Act of 1952, 66 Stat. 280, 8 U.S.C. § 1101 note, and 8 C.F.R. 1.2, 17 F.R. No. 247, Dec. 19, 1952, page 11471. As I construe these provisions, they do not make the former regulations applicable to these cases on the question of the legality of their present detention which is a condition occurring after the effective date of the statute and the current regulations.