Willie CURTIS, Plaintiff,

v.

Emery E. JACQUES, Warden of the Branch State Prison at Marquette, Michigan, and Gus Harrison, Director of Corrections for the State of Michigan, et al., Defendants.

Civ. A. No. 503.

United States District Court
W. D. Michigan, N. D.

Sept. 21, 1954.

Willie Curtis in pro. per.

Frank G. Millard, Atty. Gen. of Michigan, and Perry A. Maynard, Asst. Atty. Gen. of Michigan, for defendants.

STARR, Chief Judge.

Upon satisfactory showing the plaintiff Willie Curtis, an inmate of the branch State prison at Marquette, Michigan, was granted leave to file a petition in forma pauperis, which petition will be considered as a complaint, in which he asks that the defendants be enjoined from "their usurpations and abuse of petitioner's civil rights and general welfare." The attorney general of Michigan has filed answer on behalf of the defendants, denying plaintiff's right to the relief sought and moving to dismiss his suit.

Curtis bases his action on 28 U.S. Code § 1343.[1] In his complaint he alleges in substance that while he was an inmate of the State prison of southern Michigan at Jackson, prior to his removal to the prison at Marquette, defendants and the deputy warden of the prison at Jackson and his assistant conspired to prevent him from obtaining a parole. He alleges in general terms that while confined in State prisons he has been subjected to cruel and unusual punishment, but he sets forth no specific acts of punishment. He alleges generally that false charges were made and caused to be published against him by prison authorities; that he was threatened, abused, deprived of meals and his mail interfered with; that he was assigned to operate a machine which was unsafe; that he was deprived of rights accorded other prisoners; and that he was subjected to segregation, oppression, discrimination, and to solitary confinement.

It should be noted that the plaintiff does not question his guilt of the crime for which he was sentenced, nor does he question the legality of his conviction, sentence, and confinement in prison. The charges in his complaint relate principally to matters of internal management of the State prisons and the supervision and disciplining of the plaintiff by prison authorities. The law is well established that Federal courts do not have the power, and that it is not their function or responsibility, to control or regulate the management of State prisons and the treatment and disciplining of prisoners, or to interfere with the conduct of State prisons by State authorities. The only function of the courts is to deliver from prison those who are illegally detained. In United States ex rel. Wagner v. Ragen, 7 Cir., 213 F.2d 294, 295, the court said:

"The federal courts have held that they do not have the power to control or regulate the ordinary internal management and discipline of prisons *operated by the states.* Siegel v. Ragen, 7 Cir., 180 F.2d 785, 788. In U. S. ex rel. Morris v. Radio Station WENR, 7 Cir., 209 F.2d 105, a prisoner in an Illinois state penitentiary complained that Negroes were discriminated against by not being permitted to participate in radio programs which were transcribed at the prison for later broadcasts. In that opinion we said, 209 F.2d at page 107: 'Inmates of State penitentiaries should realize that prison officials are vested with wide discretion in safeguarding prisoners committed to their custody. Discipline reasonably maintained in State prisons is not under the supervisory direction of federal courts. Kelly v. Dowd, supra [7 Cir., 140 F.2d 81]. "We think that it is well settled that it is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined." Stroud v. Swope, 9 Cir., 187 F.2d 850, 851. A prisoner may not approve of prison rules and regulations, but under all ordinary circumstances that is no basis for coming into a federal court seeking relief even though he may claim that the restrictions placed upon his activities are in violation of his constitutional rights.'

"In a companion case, Morris v. Igoe, 7 Cir., 209 F.2d 108, this court held that while Morris was a prisoner in the Cook County Jail in the custody of Sheriff Babb and Warden Scanlan his constitutional rights

---

1. 28 U.S.Code § 1343 provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

* * *

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

were clearly not violated by the officials censoring the Chicago newspapers for which the petitioner had subscribed. In Adams v. Ellis, 5 Cir., 197 F.2d 483, 484, a prisoner in the Texas State Penitentiary filed an action for damages and an injunction under the Civil Rights Laws alleging that the prison officials had conspired to and did enforce a set of rules which required censorship of his mail, prevented him from reading law books or making notes, and prevented him from staying in his cell for the purpose of attending to ' "emergency legal matters." ' However, the court there held, 197 F.2d at page 485, that the plaintiff while a prisoner did not have 'unrestricted freedom in the receipt and transmission of mail', and that, therefore, the trial court did not err in dismissing his petition. The Supreme Court said in Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L. Ed. 1356: 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' "

In Siegel v. Ragen, D.C., 88 F.Supp. 996, affirmed, 7 Cir., 180 F.2d 785, certiorari denied 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1391, an inmate of a State prison under sentence by a State court, alleged that the defendant warden and others committed certain acts in their conduct in disciplining him which deprived him of his rights, privileges or immunities under the Constitution and the laws of the United States. In affirming the district court's dismissal of the complaint, the appellate court said, 180 F.2d at pages 787–789:

"The Federal Civil Rights Act provides, 8 U.S.C.A. § 43, that every person who under color of state law subjects any person within the jurisdiction of the United States to the deprivation of the rights, privileges or immunities secured by the Constitution and laws of the United States shall be liable to civil action by the party injured.

"It is on this section that plaintiffs base their claim for relief according to the allegations of their amended complaint. They ask that the defendants be required to cease and desist from the aforesaid acts; they pray that an accounting be had; each asks for damages in the sum of $100,000 and that the court find that malice is the gist of the action. * *

"The Government of the United States is not concerned with, nor has it power to control or regulate the internal discipline of the penal institutions of its constituent states. All such powers are reserved to the individual states. * * *

"The Civil Rights Act of the United States was passed to implement the 13th, 14th and 15th Amendments to our Federal Constitution.

"The 14th Amendment does not empower Congress to legislate on matters within the domain of the States' powers, nor to legislate against the wrongs and personal actions of individuals within the State nor to regulate and control the conduct of private individuals. In re Civil Rights Cases, 109 U.S. 3, 3 S. Ct. 18, 27 L.Ed. 835. It is plain that the Federal Civil Rights Act was never designed nor intended to redress the breach by a trustee of his equitable duties to the trust beneficiaries."

See also Adams v. Ellis, 5 Cir., 197 F. 2d 483; Sturm v. McGrath, 10 Cir., 177 F.2d 472; Dayton v. Hunter, 10 Cir., 176 F.2d 108; Shepherd v. Hunter, 10 Cir., 163 F.2d 872; United States ex rel. Yaris v. Shaughnessy, D.C., 112 F.Supp. 143.

■ To grant the plaintiff's prayer for injunctive relief would, in effect, amount to control and regulation of the management of the State prisons and the treatment and discipline of the plaintiff as a prisoner, and as that is not the proper function and responsibility of this

court or within its power, the plaintiff is not entitled to the relief sought. For the reasons stated herein the defendants' motion to dismiss the plaintiff's suit is granted and an order will be entered accordingly.