UNITED STATES of America ex rel. George ATTERBURY, Petitioner-Appellant,

v.

Joseph E. RAGEN, Warden, Illinois Penitentiary, et al., Respondents-Appellees.

No. 11756.

United States Court of Appeals Seventh Circuit.

Nov. 6, 1956.

---

George Atterbury, Joliet, Ill., for appellant.

Latham Castle, Atty. Gen., Chicago, Ill., William C. Wines, Raymond S. Sarnow, A. Zola Groves, Asst. Attys. Gen., Chicago, Ill., of counsel, for appellees.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff brings this action under the Civil Rights Act, 42 U.S.C.A. § 1981 et seq. He asserts that he is now and for some time past has been imprisoned in the Illinois State Penitentiary at Joliet, Illinois. Defendant Ragen is the Warden of the Penitentiary, and the other defendants are officers and guards at that institution. Plaintiff charges that as a result of a conspiracy, and acting under the color of state law, defendants, on various dates in 1954 and 1955 cruelly and violently beat and assaulted plaintiff with a dangerous weapon inflicting physical injuries. Plaintiff asserts that he has been deprived of his rights, privileges and immunities to be secure from cruel and inhuman punishment, and has been deprived of his civil rights. He sets forth verbatim in the complaint the provisions of § 1983, Title 42. He demands judgment in the sum of $200,000.-00.

Under the belief that plaintiff had made an application for a writ of habeas corpus, the District Court appointed an attorney to represent him. Thereafter, said attorney informed the Court the pending action was in fact one for damages in a civil suit and requested that he be permitted to withdraw from the case. The Court granted this request. Thereafter the Court, on its own motion, dismissed the action. Plaintiff appealed to this Court *in forma pauperis*.

The brief in this case was prepared by the plaintiff. In it he amplifies and gives many details as to vicious beatings which he alleges he received at the hands of the various defendants. He complains that he was placed in solitary confinement in "the hole" for two months without clothes or blankets, and that for a period of five days he was deprived of any food. He also alleged that he had been denied mail including a copy of the constitution of Illinois sent to him at his request by the Secretary of State. Strictly speaking, these allegations are not a part of the complaint, but in view of the summary manner in which the complaint was dismissed in the District Court, and in view of Rule 15, Federal Rules of Civil Procedure, 28 U.S.C.A., which provides that a party may amend his pleadings once as a matter of course before a responsive pleading is served, we shall consider that if plaintiff had been given the opportunity, he would have amended his complaint to include these allegations. In fact, plaintiff asserts in his brief that Warden Ragen refused to mail out an amended petition (complaint) which he had prepared.

It would make no difference in the disposition of the issues before us whether we give consideration to the additional allegations set forth in plaintiff's brief. The incidents cited are of the same general nature and description as those alleged in the complaint. In either case, it is clear that the alleged tortious conduct of defendants was and is contrary to the laws of Illinois. In our view, such charges of aggression by state prison officials and guards, in spite of the gen-

eral assertion that they were acting under color of state law, do not state a claim upon which relief can be granted under the federal Civil Rights Act. Ortega v. Ragen, 7 Cir., 216 F.2d 561, certiorari denied 349 U.S. 940, 75 S.Ct. 786, 99 L. Ed. 1268; Jennings v. Nester, 7 Cir., 217 F.2d 153, certiorari denied 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281. As we said in the Jennings case, 217 F.2d at page 155, "The common law provides adequate actions for damages against errant law enforcement officials."

Plaintiff relies upon and quotes extensively from Johnson v. Dye, Warden, 3 Cir., 175 F.2d 250. However, this case was reversed by the United States Supreme Court in 338 U.S. 864, 70 S.Ct. 146, 94 L.Ed. 530, rehearing denied 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551. This Supreme Court ruling was approved and followed in Sweeney v. Woodall, 344 U.S. 86, 88, 73 S.Ct. 139, 97 L.Ed. 114. In the Sweeney case petitioner was a fugitive from an Alabama prison. He complained of shocking brutalities suffered in that prison, and alleged such conduct would be continued by prison authorities should he be returned. He filed a petition for a writ of habeas corpus in Ohio, invoking the Eighth and the Fourteenth Amendments. The Supreme Court said the petitioner must test the unconstitutionality of his treatment in the courts of Alabama, and held that the United States District Court in Ohio properly dismissed the application for a writ of habeas corpus on its face.

We are somewhat concerned at the ever-increasing number of applications for habeas corpus and suits brought under the Civil Rights Act which are filed in the federal courts in this Circuit by prisoners in state penal institutions, where the basis of the complaint is the alleged brutal treatment by prison officials or other complaints with reference to the rules and regulations pertaining to prison discipline. For the most part such applications and suits are futile for the reasons hereinafter stated.

We think it is advisable to quote from some of our previous decisions to demonstrate why federal courts have an extremely limited area in which they may act pertaining to the treatment of prisoners confined to state penal institutions.

In Siegel v. Ragen, 7 Cir., 180 F.2d 785 where the prisoner claimed he had been placed in solitary confinement and his typewriter confiscated, we stated, at page 788: "The Government of the United States is not concerned with, nor has it power to control or regulate the internal discipline of the penal institutions of its constituent states."

In United States ex rel. Morris v. Radio Station WENR, 7 Cir., 209 F.2d 105, the prisoner complained that he was discriminated against as to certain radio programs because he was a negro and complained because the warden would not permit him to submit various literary scripts to publishing companies. We said, at page 107: " * * * Federal courts will rarely intervene to interfere with the conduct of State officials carrying out their duties under State laws. Kelly v. Dowd, 7 Cir., 140 F.2d 81." We further stated, at page 107: "Inmates of State penitentiaries should realize that prison officials are vested with wide discretion in safeguarding prisoners committed to their custody. Discipline reasonably maintained in State prisons is not under the supervisory direction of federal courts. Kelly v. Dowd, supra. 'We think that it is well settled that it is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries, but only to deliver from imprisonment those who are illegally confined.' Stroud v. Swope, Warden, 9 Cir., 187 F.2d 850, 851. A prisoner may not approve of prison rules and regulations, but under all ordinary circumstances that is no basis for coming into a federal court seeking relief even though he may claim that the restrictions placed upon his activities are in violation of his constitutional rights."

In the accompanying case of Morris v. Igoe, 7 Cir., 209 F.2d 108, Morris complained that he had subscribed to certain Chicago newspapers, but the warden censored same by cutting out stories and

portions of the papers. Morris claimed this was a violation of his constitutional rights. We held to the contrary.

In Ortega v. Ragen, 7 Cir., 216 F.2d 561, at page 562 we said: "This court has been hesitant to interfere with the administration of state penal institutions [citing Morris cases]. It has been held that withholding a prisoner's mail is purely an administrative matter for the warden to control [citing cases]. Certainly the control of mail going to and from inmates is an important part of administration and maintenance of discipline in a large prison. The mere withholding of a letter from a prisoner is not, of itself, violative of plaintiff's federal rights."

In United States ex rel. Wagner v. Ragen, 7 Cir., 213 F.2d 294, the prisoner sought relief under the Civil Rights Act claiming that the warden had unreasonably refused to permit him to submit inventions to the Federal Government. We stated, at page 295: " * * * In Adams v. Ellis, 5 Cir., 197 F.2d 483, 484, a prisoner in the Texas State Penitentiary filed an action for damages and an injunction under the Civil Rights Laws alleging that the prison officials had conspired to and did enforce a set of rules which required censorship of his mail, prevented him from reading law books or making notes, and prevented him from staying in his cell for the purpose of attending to ' "emergency legal matters." ' However, the court there held, 197 F.2d at page 485, that the plaintiff while a prisoner did not have 'unrestricted freedom in the receipt and transmission of mail', and that, therefore, the trial court did not err in dismissing his petition. The Supreme Court said in Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356: 'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' "

In Miles v. Armstrong, 7 Cir., 207 F.2d 284, 287, the plaintiff brought an action under the Civil Rights Act against defendants, some of whom were officials of the village of East Chicago Heights, and other defendants were private individuals. We stated at page 287: " * * * However, we do not reach the constitutional question, See Collins v. Hardyman, 341 U.S. 651, at page 662, 71 S.Ct. 937, at page 942, 95 L.Ed. 1253, for we think that the rights of which plaintiff avers he has been deprived are those which he enjoys under the laws of Illinois and which are incident to state citizenship. The injuries he asserts he has suffered are, in essence, an aggravated assault upon his person and wanton destruction of his property—grievous injuries surely. But they do not constitute privileges and immunities incident to United States citizenship; they are rather such that the perpetrators are punishable under the state law where reparation may be obtained. * * * Consequently we are impelled to conclude that plaintiff has failed to state a cause of action under Section 47(3) [now Title 42 U.S.C.A. § 1983]."

As to the charge made by plaintiff that the warden interfered with his attempted appeals to this court, it should be sufficient to point out to prison officials that in Cochran v. State of Kansas, 316 U.S. 255, 258, 62 S.Ct. 1068, 86 L. Ed. 1453, habeas corpus was used to challenge the legality of an established practice by prison officials of denying to convicts in their care the opportunity of presenting appeal papers to a higher court.

As plaintiff was unable to be personally present when this appeal was called for oral argument, William C. Wines, Esq., Assistant Attorney General, waived oral argument, and the cause was submitted to us upon the briefs.

We conclude plaintiff did not make a sufficient showing of a violation of the Civil Rights Act. It follows the order and judgment dismissing the complaint must be and is

Affirmed.

FINNEGAN, Circuit Judge (concurring).

I agree the judgment appealed must be affirmed. Yet I would point up the reason why Atterbury's verified complaint, to which no responsive pleading was filed below, fails in stating a cause of action under the Fourteenth Amendment and 42 U.S.C.A. §§ 1981, 1983, 1985(2) and (3), R.S. §§ 1977, 1979, 1980. The deficiency lies in the factual situation on which Atterbury bottoms his complaint. It is not how he has pleaded, as a matter of form or style, but what he has pleaded that cuts ground from under his position. Indeed because he is a layman presenting his appeal pro se, my brothers and I have accorded him the widest latitude. Whiting v. Seyfrit, 7 Cir., 1953, 203 F.2d 773, 774; Allen v. Corsanco, D.C.D.Del.1944, 56 F.Supp. 169.

It is understandable how the bare phrases of the Civil Rights Act would seemingly appear as an open-sesame for bringing about accountability of the state officials and employees named in the complaint. However, those statutory provisions can only be applied within the framework of constitutional law. There is more to the statutory story. Not all torts of state officials are within the ambit of the Act. For Congress, though it exercised its power to create a federal cause of action, has done so only for persons deprived of any rights, privileges, or immunities secured by the Constitution and federal laws. Collins v. Hardyman, 1951, 341 U.S. 651, 71 S. Ct. 937, 95 L.Ed. 1253. Atterbury's complaint, then, must show deprivation of some constitutionally protected right. Or, as put by Mr. Justice Douglas in Screws v. United States, 1945, 325 U.S. 91, 108, 65 S.Ct. 1031, 1038, 89 L.Ed. 1495: "The problem is not whether state law has been violated but whether an inhabitant of a State has been deprived of a federal right by one who acts under 'color of any law.' "

In his brief (p. 6) the Attorney General of Illinois tells us:

" * * * the plaintiff has suggested no more than maltreatment at the hands of State prison officials. The more brutal that maltreatment may have been, the greater is an action at law in Illinois courts."

The particular Illinois remedy is left unmentioned. However, we find § 10, Ill.Rev.Stat.1955, c. 108, implemented by § 16 charges the Illinois Department of Public Safety with "jurisdiction of the government, discipline and police of the penitentiary, the punishment * * * of the convicts * * *" and directs the Department to "inquire into any improper conduct which is alleged to have been committed by the warden or any other officer or employee of the penitentiary * * *" More significant, however, is § 38, Ill.Rev.Stat.1955, c. 108 providing:

"Whenever several convicts combined, or any single convict, shall offer violence to any officer or guard of the penitentiary, or to any convict, or do or attempt to do any injury to any building or workshops, or any appurtenances thereof, or shall attempt to escape, or shall disobey or resist any lawful command, the officers of the penitentiary and guards shall use all suitable means to defend themselves, to enforce the observance of discipline, to secure the persons of the offenders, and prevent such attempted violence or escape; and if said officers or guards employed in said penitentiary, or any of them, shall, in the attempt to prevent the escape of any convict, or in attempting to retake any convict who has escaped, or in attempting to prevent or suppress a riot, revolt, mutiny or insurrection, take the life of a convict, such officer or guard shall not be held responsible therefor, unless the same was done unnecessarily or wantonly."

Parenthetically we have also noted that at one time a statute of Illinois provided: "It shall not be lawful in said penitentiary to use any cruel or unusual mode of punishment, or to punish any

convict by whipping in any case whatever." Cahill's Ill.Rev.Stat. c. 108, § 37 (1929), but the repeal of this section by the Illinois General Assembly, in an act approved July 8, 1931, L.1931, p. 1, § 1, leaves § 38 standing. The Attorney General argues in his brief that the tortious conduct of the defendants he represents, "was contrary to State law. Therefore it was not done under color of that law [ed. State] and gives no rise to a cause of action for invasion of civil rights." On the other hand plaintiff expressly states in his complaint the assaults on his person were committed "under the guise of discipline." While I may think brutality to convicts repugnant, nevertheless there is State legislative authority for discipline and unless such course of treatment and action results in deprivation of a federal right then no basis appears for interference with the State's internal administration of its penal system.

Even a latitudinarian approach fails to disclose an impingement on some federal right owing to Atterbury. His alleged claim is outside the shelter of the federal constitution. When New York adopted electrocution as its method of carrying out the death penalty, an application for a writ of error on behalf of a condemned man brought the problem of punishment by the States, in the Fourteenth Amendment setting, before the Supreme Court. Denying the writ in that case reported as In re Kemmler, 1890, 136 U.S. 436, 10 S.Ct. 930, 34 L. Ed. 519, Chief Justice Fuller explained the relationship between the cruel and unusual punishment interdiction in the Eighth Amendment and the Fourteenth Amendment, showing the inapplicability of the former Amendment to the States. Subsequently the court decided State of Louisiana ex rel. Francis v. Resweber, 1947, 329 U.S. 459, 67 S.Ct. 374, 91 L. Ed. 422, where the petitioner had been placed in an electric chair, pursuant to lawful order, and presumably because of some mechanical difficulty death did not result. Issuance of a second death warrant stimulated a series of appeals culminating in several opinions by a divided court, the majority of which found an absence of constitutional infringements. Mr. Justice Frankfurter focused his concurring opinion, Id., 329 U.S. at pages 466–472, 67 S.Ct. at page 379, on the problem of the Fourteenth Amendment, saying inter alia:

"* * * a State may be found to deny a person due process by treating even one guilty of crime in a manner that violates standards of decency more or less universally accepted though not when it treats him by a mode about which opinion is fairly divided. But the penological policy of a State is not to be tested by the scope of the Eighth Amendment and is not involved in the controversy which is necessarily evoked by that Amendment as to the historic meaning of 'cruel and unusual punishment'. See Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 546, 54 L.Ed. 793, and particularly the dissenting opinion of White and Holmes JJ."

Mr. Justice Cardozo speaking for the Court in Palko v. State of Connecticut, 1937, 302 U.S. 319, 323, 58 S.Ct. 149, 151, 82 L.Ed. 288, summarized the theme applicable to the current matter:

"We have said that in appellant's view the Fourteenth Amendment is to be taken as embodying the prohibitions of the Fifth. His thesis is even broader. Whatever would be a violation of the original bill of rights (Amendments I to VIII) if done by the federal government is now equally unlawful by force of the Fourteenth Amendment if done by a state. There is no such general rule."

While plaintiff's incarceration under an unchallenged judgment of conviction eliminates the usual questions of procedural due process, the cases treating with state adjudicatory processes manifest rationale furnishing guidance here. See e. g. Rochin v. People of California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed.

183; Adamson v. People of State of California, 1947, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903; Commonwealth of Pennsylvania ex rel. Sullivan v. Ashe, 1937, 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43. Our prior declarations of an absence of power to exercise supervision over Illinois' regulation of its penitentiaries flows from recognizing the power reserved to that State so to do. In re Civil Rights Cases, 1883, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835.

Under the facts and circumstances of this particular record I am satisfied there was no abuse of discretion when the trial judge dismissed the complaint.