293 F.2d 233
 James PIERCE, Plaintiff-Appellant,
v.
J. E. LA VALLEE, Warden of Clinton Prison, Dannemora, New
York, Defendant-Appellee.
Martin T. SOSTRE, Plaintiff-Appellant,
v.
J. E. LA VALLEE, Warden of Clinton Prison, Dannemora, New
York, Defendant-Appellee.
William SA MARION, Plaintiff-Appellant,
v.
J. E. LA VALLEE, Warden of Clinton Prison, Dannemora, New
York, Defendant-Appellee.
 No. 418, Docket 26878.
 United States Court of Appeals Second Circuit.
 Argued June 19, 1961.
Decided July 31, 1961.
 
 Edward W. Jacko, J., New York City (Jawn A. Sandifer, New York City, on the brief), for appellants.
 Gretchen White Oberman, Asst. Atty. Gen. of New York, New York City (Louis J. Lefkowitz, Atty. Gen., New York City, and Paxton Blair, Sol. Gen., Albany, N.Y., on the brief), for appellee.
 Before CLARK and SMITH, Circuit Judges, and DAWSON, District Judge.
 CLARK, Circuit Judge.
 
 
 1
 In these three actions, plaintiffs seek relief under the Civil Rights Act, 28 U.S.C. 1343, 42 U.S.C. 1983, for religious persecution alleged to have been practiced upon them while they were inmates of Clinton State Prison at Dannemora, New York. In each complaint the plaintiff alleges that he has been denied permission to purchase the Koran, has been subjected to solitary confinement because of his religious beliefs and deprived of good time, and has been denied permission to establish contact with his spiritual advisor on the ground that such person was not on an approved correspondence list. All three complaints pray for the right to purchase the Koran, for an end to religious discrimination, and for other and further relief as justice requires. The Pierce complaint, in addition, specifically requests the right to contact a spiritual advisor. The only defendant in all three actions is the warden of the prison at Dannemora, where all three plaintiffs were incarcerated at the time they commenced their actions. At the time of trial, plaintiffs Sostre and SaMarion had been transferred to the Attica State Prison, and Pierce alone remained at Dannemora. No assurance exists, however, that SaMarion and Sostre may not be returned to Dannemora; and we do not think the mere fact of their transfer to another prison renders their actions moot.
 
 
 2
 At trial, the district court over protest limited the issues to the denial of the Koran, on the ground that any other problems raised by the complaint concerned matters of prison discipline to be reviewed only in the state courts. With respect to the right to contact a 'spiritual advisor,' plaintiffs acquiesced in this decision; and we think that issue must be deemed to have been abandoned. Indeed, when the defense referred to this problem on a couple of occasions, plaintiffs' attorney protested on the ground that it was not one of the issues in the case.[1] But no such abandonment may be found with respect to the issues of solitary confinement and good time. If plaintiffs ever acquiesced in the withdrawal of these issues, they did so only under pressure from the court and they withdrew their acquiescence almost immediately. Throughout the trial they sought to introduce evidence in support of this claim. Accordingly, unless the district court was correct in holding that this was a matter for the state court, we must reverse and remand for consideration of the issues thus raised.
 
 
 3
 A considerable body of authority, particularly from the Seventh and Ninth Circuits, holds that a state prisoner complaining of improper prison treatment must seek his relief in the state court. See, e.g., State of Oregon ex rel. Sherwood v. Gladden, 9 Cir., 240 F.2d 910; United States ex rel. Atterbury v. Ragen, 7 Cir., 237 F.2d 953, certiorari denied 353 U.S. 964, 77 S.Ct. 1049, 1 L.Ed.2d 914; United States ex rel. Wagner v. Ragen, 7 Cir., 213 F.2d 294, certiorari denied 348 U.S. 846, 75 S.Ct. 68, 99 L.Ed. 667; United States ex rel. Morris v. Radio Station WENR, 7 Cir., 209 F.2d 105; Siegel v. Ragen, 7 Cir., 180 F.2d 785, certiorari denied 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1391; Kelly v. Dowd, 7 Cir., 140 F.2d 81, certiorari denied 321 U.S. 783, 64 S.Ct. 639, 88 L.Ed. 1075; Nichols v. McGee, D.C.N.D.Cal., 169 F.Supp. 721, appeal dismissed 361 U.S. 6, 80 S.Ct. 90, 4 L.Ed.2d 52; Curtis v. Jacques, D.C.W.D.Mich., 130 F.Supp. 920; Piccoli v. Board of Trustees and Warden of State Prison, D.C.N.H., 87 F.Supp. 672. Whatever may be the view with regard to ordinary problems of prison discipline, however, we think that a charge of religious persecution falls in quite a different category. See Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; Follett v. Town of McCormick, S.C., 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938, 152 A.L.R. 317; Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, 146 A.L.R. 81. As the Supreme Court has there pointed out, freedom of religion and of conscience is one of the fundamental 'preferred' freedoms guaranteed by the Constitution. We must approach decision with that admonition in mind.
 
 
 4
 Hence the present cases are quite distinguishable from those presenting charges that prisoners were abused physically, or subjected to unreasonable restrictions on their personal liberty. United States ex rel. Atterbury v. Ragen, supra; United States ex rel. Wagner v. Ragen, supra; Siegel v. Ragen, supra; Curtis v. Jacques, supra. In part, these decisions may be explained on the ground that they do not involve any violation of a constitutional right. See particularly the concurring opinion of Judge Finnegan in United States ex rel. Atterbury v. Ragen, supra, 7 Cir., 237 F.2d 953, 957. True, not all of the cases cited above can be so distinguished. United States ex rel. Morris v. Radio Station WENR, supra, and Nichols v. McGee, supra, involved claims by Negro prisoners that they were denied the equal protection of the laws. Kelly v. Dowd, supra, moreover, involved the same problem presented here, namely, a claim of religious persecution in the denial of a prisoner's right to secure Bible study helps circulated by the Watch Tower Society. On the other hand, a district court has granted relief to a state prisoner who claimed unreasonable interference with his access to law books. Bailleaux v. Holmes, D.C.Or., 177 F.Supp. 361. And in a case involving a federal prison, the Fourth Circuit has recently held in a reasoned opinion by Chief Judge Sobeloff that the question of religious freedom will be considered by a federal court, as against the argument that prison discipline is an executive function with which the judicial branch ordinarily will not interfere. Sewell v. Pegelow, 4 Cir., 291 F.2d 196. So we feel constrained to hold, notwithstanding the cited adverse rulings, that the present complaints, with their charges of religious persecution, state a claim under the Civil Rights Act which the district court should entertain.
 
 
 5
 No bar to federal relief is presented by N.Y. Correction Law 610, guaranteeing prisoners 'free exercise and enjoyment of religious profession and worship, without discrimination or preference.' In Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, the Supreme Court held that a federal court should refrain from passing on the constitutionality of action by a state administrative agency, pending a determination by a state court as to whether or not the agency action was valid under state law. Unlike Pullman, however, the present cases involve no unresolved question of state law, solution of which might render a decision on the constitutional issue unnecessary. Either the plaintiffs were punished solely because of their religious beliefs or they were not. If they were, the defendant's conduct violates both the state statute and the United States Constitution. If the plaintiffs were punished for legitimate reasons, neither law is violated.
 
 
 6
 We find, therefore, that this is not a case where federal courts should abstain from decision because the issue is within state cognizance. We adhere to this view despite the provision in N.Y. Correction Law 610 that prisoners may sue to secure their rights to religious liberty in the supreme court of the state district where the prisoner is incarcerated. This provision does not set up an administrative procedure which must be exhausted under the doctrine of Alabama Public Service Commission v. Southern Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002,[2] but simply prescribes the venue for an ordinary court action. The defense here does not make any contention that an action in the state court would be of any particular convenience. We are not told that the state court is significantly closer to the prison than the federal court, or that guards and other witnesses can testify in the state court with less disruption of prison routine than would result from testimony in the federal court. Indeed, the defense has failed to give any reason why a trial in the state court is more desirable than a consideration by the federal court on the merits. The judgments below must therefore be vacated, and the cases remanded for consideration of the claims that plaintiffs were disciplined solely because of their religious beliefs.
 
 
 7
 The remand thus ordered will not, however, reach or apply to the remaining issue concerning the dismissal of the claim for the right to purchase Korans. On January 5, 1960, after the present actions were commenced, the Commissioner of Correction issued a directive to wardens of state prisons approving for purchase by inmates four different translations of the Koran published in the United States. On June 9, 1961, this memorandum was supplemented by the addition of an edition of the Koran published in Pakistan in 1951. This latter edition is the one sought by the plaintiffs, and the defendant represented in open court that this edition is available for purchase by plaintiffs in accord with the prison's regular procedures. In these circumstances the district court could properly conclude that there was no reasonable probability of a continuance of a denial to the plaintiffs of their Korans in violation of any constitutional rights. Cf. S.E.C. v. Culpepper, 2 Cir., 270 F.2d 241, 249-250.
 
 
 8
 Reversed and remanded.
 
 
 9
 DAWSON, District Judge (dissenting).
 
 
 10
 As the majority opinion states, each plaintiff in his complaint presented three matters in which he claimed his civil rights had been violated: (1) that he had been denied permission to purchase the Koran; (2) that he was subjected to solitary confinement, or other punishment, because of his religious beliefs; and (3) that he was denied permission to establish contact with a spiritual adviser on the ground that such person was not on the approved correspondence list. Plaintiffs claim to be adherents of an American Negro sect known as 'Muslims.'
 
 
 11
 A hearing was held. At the start of the hearing, Judge Brennan sought, by interrogating counsel, to ascertain what issues actually were in dispute. This procedure was proper since the vague and discursive complaints did not define the issues with any precision. Counsel for plaintiffs agreed that the sole issue raised by plaintiffs was the right to access to the Koran. At pages 35-36 of the minutes of the hearing there is the following colloquy:
 
 
 12
 'The Court: * * * you can only litigate those things that you set out in your complaint, and as I read these complaints the burden of the complaint is that tahe Qur'an, inability to obtain it or something about it, and that seems to be the burden of the complaint. That is the only cause of action you claim, isn't it?
 
 
 13
 'Mr. Jacko: Yes, your Honor.'
 
 And again, at page 37:
 
 14
 'The Court: * * * My question is just as simple as can be and anyone can understand it, that the crux of this litigation here in each of these cases is each plaintiff claims that they were unconstitutionally deprived of the rightg to purchase or obtain or possess a holy book which they call the Qur'an isn't that all there is to the case?
 
 
 15
 'Mr. Jacko: That's right.
 
 
 16
 'The Court: Why all the speeches?
 
 
 17
 'Mr. Jacko: I wanted to clear the atmosphere about that.'
 
 
 18
 When defendant sought to introduce evidence of prison rules, plaintiffs' counsel objected on the ground that 'the issues here relate in the plaintiffs' cases now to the purchase of the Koran.'
 
 
 19
 The majority opinion concludes that the concessions made by the plaintiffs rsulted in an abandonment of the 'spiritual adviser' issue. It is equally clear that they abandoned issue No. 2, i.e., that they had been punished because of religious beliefs. Plaintiffs themselves restricted the issue to that of their right to acquire copies of the Koran. That issue was tried.
 
 
 20
 As the majority opinion points out, evidence was received that on January 5, 1960, after the present actions were instituted, the Commissioner of Correction issued a directive to the wardens of state prisons approving for purchase by inmates various translations of the Koran published in the United States, and later supplemented this directive by a memorandum of June 9, 1961, allowing inmates of the state prisons to acquire an edition of the Koran published in Pakistan, which is the edition that was sought by plaintiffs. Under the circumstances, the trial court properly concluded that there was no reasonable probability of a denial to the plaintiffs of the Koran and dismissed the actions as moot.
 
 
 21
 To now remand the action for trial on an issue which was abandoned by the plaintiffs when the matter was before the trial court, seems to me to involve a waste of judicial time. If future actions by the prison authorities appear to the plaintiffs to be punitive actions because of their religious beliefs, there is no reason why they cannot bring a new action. But to allow plaintiffs to abandon an issue at trial, and then to remand the action for trial on the hitherto abandoned issue, does not seem to be good judicial administration. I would vote to affirm.
 
 
 
 [1]
 Thus, when counsel for the defendant, in his opening, stated that prison rules prohibited correspondence with known criminals, plaintiffs' counsel stated that he wished 'to object strenuously * * * that counsel is going far afield of the issues in the case.' And when defendant sought to introduce evidence of these rules, plaintiffs objected on the ground that 'the issues here relate in the plaintiffs' cases now to the purchase of the Koran.' These and other remarks during the trial make clear that plaintiffs, whether because they believed their claim untenable or for some other reason, abandoned the 'spiritual advisor' issue
 
 
 [2]
 Neither is any such administrative proceeding provided for in N.Y.Correction Law 47-48, as the district court suggested