Edward REDDING, Plaintiff,

v.

Frank J. PATE, Dr. Venckus and Rev. A. A. Sorensen, Defendants.

No. 63 C 189.

United States District Court
N. D. Illinois, E. D.
June 18, 1963.

William R. Ming, Jr., Chicago, Ill., for plaintiff.

Daniel N. Kadjan, Asst. Atty. Gen., William G. Clark, Atty. Gen. of Illinois, Chicago, Ill., for defendants.

WILL, District Judge.

Edward Redding is a prisoner in the Illinois State Penitentiary at Joliet. He filed a complaint in this Court which seeks an injunction and a declaratory judgment that his rights "may have been abrogated under color of State Law" by certain prison officials including the Warden, Frank J. Pate. The complaint also asserts that "jurisdiction is invoked, absent diversity of citizenship or jurisdictional amount, under [the] Doctrine of * * * Ortega v. Ragen, 216 F.2d 561 (7th Cir., 1954.)" [1]

Defendant Pate has moved to dismiss the complaint as to him. His motion attacked the Court's jurisdiction on the ground that plaintiff has failed to allege either diversity of citizenship or the requisite dollar amount, both of which he claims are necessary to maintain a declaratory judgment action herein. Alternatively, defendant asserts that "the presence of a federal question has not been demonstrated. * * * "

The allegations of the complaint, obviously prepared by the prisoner, which the Court is bound in the interests of justice to interpret with liberality,[2] are as follows:

Plaintiff states that he is an epileptic who has recently suffered intense daily

[1.] Cert. denied, 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955). The Ortega case holds, in part, that a federal district court has jurisdiction of actions arising under the Civil Rights Act, 42 U.S.C. §§ 1981–1995, without regard to either diversity of citizenship or the requisite dollar amount.

[2.] See Rice v. Olson, 324 U.S. 786, 791–792, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); Gale v. Wagg, 140 F.Supp. 6, 10 (E.D. Mich.1956).

headaches for which he has received inadequate treatment. He charges that this treatment has taken the form of prescriptions for medication and laboratory tests, but that he has never been examined by the prison physician, even in the wake of new attacks. He further charges that he was "rebuked by the doctor, falsely accused of abusing the privilige [sic] to make sick call, punished by the captain and denied the opportunity to see the Warden, Frank J. Pate." It is also asserted that he has been unjustly consigned to the coal pile and compelled to cell alone. It appears from the complaint that these latter actions were taken both as a result of the alleged sick call violations and as a result of information, the truth of which plaintiff vigorously denies, that while under sentence in a Florida penal institution he, as a Negro, had associated with a white inmate who was thought to be a homosexual.

Two supplemental documents (each entitled "Additional Statement of Fact") have been received from the plaintiff. They reassert the allegations of the complaint and charge the defendants with further unwarranted action in retaliation for the filing of this lawsuit.

■ It is well settled that a suit to redress the deprivation of a federal civil right is maintainable in this or any other federal district court regardless of diversity of citizenship or jurisdictional amount (neither of which are pleaded herein). Ortega v. Ragen, supra. Accordingly, the crucial inquiry on the motion is whether the complaint alleges facts and otherwise affords a basis for a claim which is cognizable under the Civil Rights Act, 42 U.S.C. §§ 1981–1995.

The vast majority of cases in which relief has been sought in the federal courts for asserted maltreatment of state prisoners by prison officials have been dismissed without a hearing on the merit. The grounds for dismissal have variously been (1) the inapplicability to the States of the Eighth Amendment's guarantee against cruel and unusual punishment,[3] (2) the failure to exhaust existing State remedies,[4] (3) the notion that an assumption of jurisdiction would constitute an unwarranted intrusion in the internal discipline of State penal institutions,[5] or combinations of the foregoing. There have been instances, however, in which federal district courts have taken jurisdiction under the Civil Rights Act in such matters. For example, in Gordon v. Garrson, 77 F.Supp. 477 (E.D. Ill.1948), Judge Lindley denied a motion to dismiss as to a prison warden on the basis of the following allegations:

"As to defendant Irwin, the suit is against him in his capacity as representative of the state, so as to bring the provisions of the Civil Rights Act into play. Plaintiff identifies him as Warden or Superintendent of the Illinois State Farm and implies at least, that the injuries resulted because of failure of defendant to exercise care, as Superintendent, for plaintiff's well-being. Plaintiff avers that after he had been struck and beat over the head with a black-jack by an officer, resulting in infection of the middle ear and complete deafness in that ear, he was dragged to a sub-basement solitary cell and chained by the wrist for 18 hours; that, by order of the defendant, he was placed and kept in the solitary cell for 92 days incommunicado; that, subsequently, by order of Irwin, he was fed bread and water 6 days a week, with one full meal every seventh day, for 92 days; that, with knowledge of Irwin, during that period, plaintiff was forced to sleep on a wet cement floor on

---

3. Cf. United States ex rel. Atterbury v. Ragen, 237 F.2d 953, 957–958 (7th Cir., 1956) (concurring opinion), cert. denied, 353 U.S. 964, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957).

4. See, e. g., Kelly v. Dowd, 140 F.2d 81, 88 (7th Cir.), cert. denied, 321 U.S. 783, 64 S.Ct. 639, 88 L.Ed. 1075 (1944).

5. See, e. g., Siegel v. Ragen, 180 F.2d 785, 788 (7th Cir.), cert. denied, 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1391 (1950).

a wet blanket; that, with knowledge of Irwin, he was starved, mistreated and inhumanely punished from November 10, 1942 until February 8, 1943; that he was allowed one bath by Irwin and that he was compelled to walk in his stocking feet in snow the distance of a city block to obtain that. These averments, it seems to me, state a legitimate cause of action under the Civil Rights Act against Irwin." 77 F.Supp. at 479–480.

While Judge Lindley discusses in an earlier part of the opinion the question of whether the above actions were taken by Irwin in his capacity as warden or superintendent—thereby invoking the color of State law required by section 1983 [6] —he nowhere discusses what federal civil right the plaintiff was deprived of as a result of his prison treatment. The alleged facts probably constitute cruel and unusual punishment within the meaning of the Eighth Amendment. In light of this, it is perhaps fair to assume that Judge Lindley did not rely on the Eighth Amendment because, as the law stood then (1948), the Supreme Court had never, in so many words, sanctioned its application to the States.

In the absence of a clear-cut interpretation by the Supreme Court extending the Eighth Amendment to the States, a judge-made federal civil right evolved. Thus, in Blythe v. Ellis, 194 F.Supp. 139 (S.D.Tex.1961), allusion is made to the purview of this right:

"The court is of the opinion that defendant's alleged conduct constitutes 'internal discipline'. Federal courts do not inquire into such matters as solitary confinement, refreshment funds, work assignments, etc. Bryant v. Harrelson, * * * 187 F.Supp. 738; Siegel v. Ragen, * * 180 F.2d 785, certiorari denied 1950, 339 U.S. 990 * * *. No inten-

tional deprivation of essential medical care or infliction of serious bodily injury appears. Unlike 'internal discipline', those occurrences are actionable. Gordon v. Garrson, * * 77 F.Supp. 477; Coleman v. Johnston, 7 Cir., 1957, 247 F.2d 273 * * *." 194 F.Supp. at 140.

Interestingly enough, the opinion goes on to assert in the next paragraph that "(a)s for the Eighth Amendment's 'cruel and unusual punishment' clause, it is inapplicable. McElvaine v. Brush, 1891, 142 U.S. 155 * * * compels this conclusion. Ex parte Bernard * * * 52 F.Supp. 102, at page 104, states ' * * * the Eighth Amendment * * * is not a guarantee against state action.' * *." Ibid.

 The above, however, is no longer a correct statement of the law. The Supreme Court clarified any doubt in the matter by its recent opinion in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), wherein the Eighth Amendment's guarantee against cruel and unusual punishment was applied through the Due Process Clause of the Fourteenth Amendment to a California statute making drug addiction a crime. Accordingly, those decisions which have bottomed their dismissal of Civil Rights actions by State prisoners in whole or in part on the assumption that the Eighth Amendment is not applicable to the States have been overruled to that extent.

There still remains, of course, the question of what constitutes "cruel and unusual punishment," but the notion that the States are immune from this guarantee of the Bill of Rights is now nothing more than nostalgia. Moreover, the cases make it clear that the concept of "cruel and unusual punishment" is broad and elastic. Thus, in the Robinson case 370 U.S. at 675–676, 82 S.Ct.

6. 42 U.S.C. § 1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

at 1424–1425, 8 L.Ed.2d 758, Justice Douglas states in his concurring opinion:

"The command of the Eighth Amendment, banning 'cruel and unusual punishments,' stems from the Bill of Rights of 1688. * * * And it is applicable to the States by reason of the Due Process Clause of the Fourteenth Amendment. * *

"The historic punishments that were cruel and unusual included 'burning at the stake, crucifixion, breaking on the wheel' * * *, quartering, the rack and thumb-screw * * *, and in some circumstances even solitary confinement. * * *

"The question presented in the earlier cases concerned the degree of severity with which a particular offense was punished or the element of cruelty present. [Footnote omitted] A punishment out of all proportion to the offense may bring it within the ban against 'cruel and unusual punishment.' * * * So may the cruelty of the method of punishment, as, for example, disemboweling a person alive. * * * But the principle that would deny power to exact capital punishment for a petty crime would also deny power to punish a person by fine or imprisonment for being sick.

"The Eighth Amendment expresses the revulsion of civilized man against barbarous acts—the 'cry of horror' against man's inhumanity to his fellow man. * * "

While the scope of the Eighth Amendment's guarantee, as thus far interpreted, may not encompass the allegations of the complaint herein, it does seem essential to point out how the limits of inquiry can so easily be constricted by false notions of the prevailing law, as, for an obvious example, the notion that the Eighth Amendment does not apply to the States.

Notwithstanding this, however, I am satisfied that the complaint does state a claim under 42 U.S.C. §

1983 for intentional deprivation of essential medical care. Such a claim is actionable even under the strict construction of the Blythe case, supra. As to the requirement that existing State remedies must first be exhausted, the landmark case of Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 481–482, 5 L.Ed.2d 492 (1961), disposed of that by the following language:

"* * * The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."

Accordingly, to the extent that recourse to a federal district court on such a claim invades the legitimate interest of the State in the internal discipline of its penal institutions, that interest must give way when a federally created and protected civil right is allegedly infringed.

One final word should be said with regard to the anomalous notion, implicit in the defendant's position and articulated orally before the Court, that a prisoner duly convicted and incarcerated in a State penitentiary thereby suffers the loss of all his civil rights save the right to his life and the right to appeal his conviction. It is enough to quote Judge Lindley's language from Gordon v. Garrson, supra, 77 F.Supp. at 479, to dispose of this contention:

"Defendant denies that plaintiff is entitled to invoke the provisions of the Civil Rights Act because, since he has been convicted of a felony, he is not technically a 'citizen.' But due process of law and equal protection of the laws are guaranteed not only to citizens but to any person and Civil Rights Act provides a remedy for deprivation of these rights. * * It would seem that the statute applies not only to citizens but to any 'person within the jurisdiction' of the United States."

Defendants' motion to dismiss the complaint was denied on June 18, 1963. This opinion will be filed *nunc pro tunc* as of that date.