James H. CHILDS, Appellant,

v.

Paul F. PEGELOW, etc., et al., Appellees.

Charles 5X LINCOLN, Appellant,

v.

Paul F. PEGELOW, etc., et al., Appellees.

Lloyd SMITH, Appellant,

v.

Paul F. PEGELOW, Supt., Stanley A. Knupp, Asst. Supt., Appellees.

Nos. 8948–8950.

United States Court of Appeals Fourth Circuit.

Argued June 12, 1963.

Decided Aug. 1, 1963.

———◆———

Hal Witt, Washington, D. C. (Court-assigned counsel) [Richard J. Scupi, Washington, D. C., on brief], for appellants.

John R. Hess, Asst. Corporation Counsel, D. C., and Milton D. Korman, Principal Asst. Corporation Counsel, D. C. (Chester H. Gray, Corporation Counsel, D. C., and Hubert B. Pair, Asst. Corporation Counsel, D. C., on brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

The appellants, Childs, Lincoln and Smith, plaintiffs or petitioners below, all inmates of the Federal Reformatory at Lorton, Virginia, appeal from orders entered on January 3, 1963, by the United States District Court for the Eastern District of Virginia dismissing their petitions for injunctive relief. Each of these plaintiffs filed a petition accompanied by an affidavit in support of a motion for leave to proceed *in forma pauperis*. These filings were between December 8, 1962, and December 17, 1962. Between December 17 and 21, 1962, eighteen additional petitions were received by the court. The twenty-one petitions were substantially similar and in each case the prison officials of the District of Columbia Department of Corrections, Lorton Reformatory, Lorton, Virginia, were named as defendants. The petitions alleged that the defendants had been informed that the plaintiffs adhere to the Muslim religion which requires plaintiffs to fast during the month of December, "Ramadan"; that defendant Pegelow, Superintendent at Lorton, had

advised Muslim Minister James 15X C. White, an inmate of the Reformatory, that Muslim inmates would be daily fed a full course pork-free meal after sundown during December; that the agreement to provide said meal had not been carried out and the health and welfare of Muslim inmates were thereby endangered. Each petition prayed the court to forthwith issue a temporary order requiring the defendants to feed all Muslim inmates at Lorton a full course pork-free meal after "sundown" during the month of December. The District Court granted permission to proceed *in forma pauperis*, docketed the cases and directed the United States Attorney to file answers on or before December 21. On that date, being the date on which the last of the petitions were filed, defendants moved to consolidate the cases then on the docket and also filed a motion, accompanied by affidavit of defendant, Superintendent Pegelow, to dismiss or, in the alternative, for summary judgment. All twenty-one cases were consolidated for trial and on December 21, 1962, a hearing was held before the district judge.

At the hearing, plaintiff James H. Childs (appellant in No. 8948), upon the court's request for presentation of testimony, asked that counsel be provided to represent the plaintiffs. The court stated that their rights would be protected and offered Childs the choice of testifying or being excused. The court explained that the hearing was being held primarily in an effort to expedite the matter and that because of the approaching Christmas holidays any delay would eliminate all possibility for a hearing until after January 1, 1963. When Childs declined to testify without court-appointed counsel, the district judge directed that he be returned to Lorton and continued his case.

The district judge had directed that several of the plaintiffs be brought into court for the hearing and, pursuant to his request, seven were present. Plaintiff Charles 5X Lincoln (appellant in No. 8949) was not among those selected by the prison officials to attend the hearing as it was not deemed necessary that all petitioners be present due to the similarity of the subject matter of the petitions. However, plaintiffs King .X. S. Shepard and Lloyd Smith (the latter being the appellant in No. 8950) were present and testified. They requested the assistance of counsel but were advised by the court that counsel could not be provided at that time on such short notice, that the questions presented would be moot after the end of December and that the cases would not be continued. By direct questioning, the judge elicited testimony on behalf of the plaintiffs from Shepard, Smith and James 15 X C. White. White was not one of the plaintiffs but was called as a witness by Smith. Minister White offered the explanation that according to the Koran, the Muslims' religious guide, fasting during Ramadan must continue until darkness has fallen, and "darkness" occurs only when it is impossible to distinguish a white thread from a black thread when held side by side. The defendants called as witnesses William I. Eaton, food supervisor at Lorton, Paul F. Pegelow, Superintendent, and Irwing, an inmate and head meat cutter in the kitchen at Lorton. Some limited cross-examination of these defense witnesses was conducted by Minister White and by plaintiff Shepard on behalf of the plaintiffs. A table showing the times of sunrise and sunset on each day of December in Washington, D. C., (and nearby Lorton) prepared by the Nautical Almanac Office, United States Naval Observatory, and several of the prison's internal administrative orders were also placed in evidence by the defendants. There was evidence to show that the time of serving the principal meal of the day was changed from noon to evening about the end of November 1962.

The court found that defendant Pegelow had been informed that Muslims observe fasting during the month of December; that Pegelow advised Minister White that Muslims would be fed an adequate diet during December; that

an order was issued November 30, 1962, advising all prison "watch supervisors" that Muslims would be excused from partaking of the noon meal during the month of December; that an order effective November 26, 1962, provided that the supper hour should be from 5:00 to 6:00 P.M. instead of the customary hour of 4:15 to 5:15 P.M. The court further found that Muslim inmates were served breakfast about 6:30 A.M. and supper between 5:30 and 6:00 P.M.; that all meals served Muslim inmates were pork-free; and that the sun rises in the Washington area (and Lorton, Virginia) in December no earlier than 7:07 A.M. and sets no later than 4:56 P.M. The court concluded:

"It is obvious from this record that all of the petitioners were offered a pork-free meal prior to sunrise and subsequent to sunset during the month of December. The petitioners' complaints are both frivolous and unjustified, and their respective petitions for the granting of a temporary restraining order" are denied.

Subsequently, on January 3, 1963, the court issued orders dismissing the suits of the plaintiffs as moot, since the injunctive relief as prayed for would have been effective only during the month of December 1962.

Following the District Court's denial of plaintiffs' petitions to appeal *in forma pauperis* for lack of good faith, 28 U.S.C. § 1915(a), this court granted leave to appeal *in forma pauperis*, appointed counsel to represent plaintiffs on appeal and ordered consolidation of these three appeals for briefing and argument.

Before us the plaintiffs assigned the following as errors of the District Court: (1) Failure to appoint counsel for plaintiffs; (2) denial of injunctive relief to plaintiff Lincoln and dismissal of his suit on the basis of a hearing at which he was neither present nor represented; and (3) dismissal of the suits on the ground of mootness.

Arguments were presented to show the annual recurrence of the Muslim "Ramadan" fast period with concomitant problems and the procedural needs of each of these plaintiffs for appointment of counsel and for a full hearing. However, for the reasons hereinafter stated, we deem it unnecessary to consider the merits of these contentions or those of the defendants.

Under the District of Columbia Code, the management and control of Lorton Reformatory has been entrusted to the Commissioners of the District of Columbia and the District of Columbia Department of Corrections.[1] We may assume that, in the absence of allegations to the contrary, these authorities exercise proper and humane discretion in safeguarding the rights and privileges of prisoners so far as consistent with effective prison regulation and administration. It clearly appears to be the general rule that, except in extreme cases, the courts will not interfere with the conduct of a prison, with the enforcement of its rules and regulations, or its discipline.[2]

1. D.C.Code App. Tit. I (1961), Reorganization Order No. 34, May 28, 1953, as amended December 10, 1953, August 12, 1954, May 17, 1956, and July 14, 1960.

2. See Roberts v. Pegelow, 313 F.2d 548 (4th Cir. 1963); White v. Clemmer, 111 U.S.App.D.C. 145, 295 F.2d 132 (1961), cert. denied 368 U.S. 992, 82 S.Ct. 611, 7 L.Ed.2d 529 (1962); Haskins v. United States, 292 F.2d 265 (4th Cir. 1961); Tabor v. Hardwick, 224 F.2d 526 (5th Cir. 1955), cert. denied, 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843 (1956); Dayton v. McGranery, 92 U.S.App.D.C. 24, 201 F.2d 711 (1953); Henson v. Welch, 199 F.2d 367 (4th Cir. 1952); Adams v. Ellis, 197 F.2d 483 (5th Cir. 1952); Williams v. Steele, 194 F.2d 32 (8th Cir. 1952), aff'd on rehearing, 194 F.2d 917, cert. denied, 344 U.S. 822, 73 S.Ct. 20, 97 L.Ed. 640; Stroud v. Swope, 187 F.2d 850 (9th Cir. 1951), cert. denied, 342 U.S. 829, 72 S.Ct. 53, 96 L.Ed. 627; Sturm v. McGrath, 177 F.2d 472 (10th Cir. 1949); Dayton v. Hunter, 176 F.2d 108 (10th Cir. 1949), cert. denied, 338 U.S. 888, 70 S.Ct. 184, 94 L.Ed. 545; Powell v. Hunter, 172 F.2d 330 (10th Cir. 1949); Numer v. Miller, 165 F.2d 986 (9th Cir. 1948).

There can be no doubt that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). In the recent case of Roberts v. Pegelow, 313 F.2d 548 (4th Cir. 1963), where inmates of Lorton Reformatory challenged the propriety of measures taken for the security of the institution itself and the punishment imposed for violation of prison rules, this court held such claims to be nonjusticiable.

This court has repeatedly and consistently recognized the right of penitentiary inmates to challenge the validity of their detention. This and other courts have recognized the right of such inmates to seek court relief from allegedly illegal acts or omissions by prison authorities.[3] Complaints or petitions alleging deprivations of constitutionally and legally protected rights are accepted as presenting justiciable issues or questions where the facts are set forth with sufficient particularity. But in the present case no such issues were presented.

 It is clear from the original petitions that plaintiffs sought merely to have the court enforce an agreement by which defendant Pegelow was alleged to have orally promised to daily provide Muslim inmates of Lorton with a full course pork-free meal after sundown during the month of December 1962. Such arrangements are clearly matters of internal prison administration, no doubt bringing into play many varied considerations, and do not rise to the level of constitutional rights involving due process of law and equal protection of the laws such as those recognized and protected in the few cases where courts have carved out exceptions to the accepted rule of noninterference with prison administration. There is no charge here of discrimination against the plaintiffs by way of interference with the practice of their religious beliefs as in Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961). Nothing could be more routine in prison administration than determining dining hours and practices. The plaintiffs are, in fact, seeking special privileges because of their religious beliefs, privileges not extended to the other inmates. It is readily foreseen that, in considering plaintiffs' request for a late supper hour, many complicated problems might be presented involving the services of kitchen supervisors, cooks, dish washers, attendants, their hours of work and their periods of relaxation and rest. It has been pointed out repeatedly that prisoners suffer a limitation of many privileges and rights, Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), even a limitation of the right to bring civil actions. See Tabor v. Hardwick, 224 F.2d 526 (5th Cir. 1955), and reference therein to the recognition of the fact that, under the laws of many states, imprisonment destroys the legal capacity of penitentiary inmates to sue. We find no basis in the present cases for making an exception to the general rule that courts will not interfere with routine matters of prison administration. We, therefore, hold that no justiciable issue was presented by the petitions and there was no duty devolving upon the District Court to conduct a hearing or consider the merits of the charges.

 Although our decision is not predicated upon the hearing record, it is noteworthy that the facts appear to have been fully developed, notwithstanding the lack of counsel for petitioners, and support the conclusion of the District Court that the complaints were both frivolous and unjustified. The defendant prison

3. Roberts v. Pegelow, supra; Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961), appeal dismissed per stipulation, 304 F. 2d 670 (4th Cir. 1962). See also: Fulwood v. Clemmer, 111.U.S.App.D.C. 184, 295 F.2d 171 (1961); White v. Clemmer, 111 U.S.App.D.C. 145, 295 F.2d 132 (1961), cert. denied, 368 U.S. 992, 82 S. Ct. 611, 7 L.Ed.2d 529 (1962); Spires v. Dowd, 271 F.2d 659 (7th Cir. 1959); 42 U.S.C.A. § 1983.

officials were under no legal obligation to meet the demands of the Muslims for special dining hours when to do so meant changing the routine for approximately three thousand other inmates at Lorton. The establishment of dining hours for December prior to the earliest sunrise and after the latest sunset indicates a good faith effort to carry out the arrangement as defendants obviously understood it. It would appear that the prison authorities are entitled to plaintiffs' commendation for their efforts to cooperate but should not be subjected to court interference with the routine management of the institution. Certainly, each plaintiff should understand that he was shown much more consideration than a prisoner is legally entitled to ask and receive. The obvious way in which the plaintiffs may assure their right to the free and unfettered practice of their religion in its every detailed teaching and custom is to earn the right to live outside the federal prison.

Affirmed.

NOTE. All members of this court wish to express their deep appreciation to court-appointed counsel and to commend them for their excellent representation of the plaintiffs in the preparation and presentation of these cases on appeal.

SOBELOFF, Chief Judge (dissenting).

While I accept the statement of the basic facts, it is not at all clear to me that the claims raised by the plaintiffs are non-justiciable. I would reverse and remand the cases to the District Court for a full inquiry at which the plaintiffs should be afforded the representation of counsel.

The initial and central mistake, as I see it, was the failure to appoint counsel. One can appreciate the District Judge's sense of urgency and his fear that if the hearing were delayed for the appointment of counsel the fast season of Ramadan would have lapsed. While the press of time warranted disposing of the petition for a temporary restraining order before the appointment of counsel, it did not justify final disposition of the complaints before making provision for the capable professional representation of the plaintiffs in a full hearing on the merits.*

The majority rests its decision on the altogether correct principles that "except in extreme cases, the courts will not interfere with the conduct of a prison, with the enforcement of its rules and regulations, or its discipline" and that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." [Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948).] Having laid this sound foundation, the majority then notes that in their original petitions the plaintiffs merely sought to have the District Court enforce an agreement between the prison authorities and their minister. The opinion then declares that this is a matter of internal prison administration not arising to the level of a possible deprivation of constitutional right and therefore is subject to the "accepted rule of noninterference with prison administration." Observing that "[t]here is no charge here of discrimination against the plaintiffs by way of interference with the practice of their religious beliefs * * *" the court nevertheless continues by way of *obiter dictum* to say that the plaintiffs could not prevail even had they charged religious discrimination or interference. Taking this view, that no justiciable claims are involved, the majority treats the failure to appoint

---

* It seems to me obvious error to dismiss the complaints as moot, on January 3, 1963, on the ground that the month of Ramadan in 1962 had lapsed. Since Ramadan will arrive each year and there is no indication that the cause for the plaintiffs' complaints will be removed, it is clear that, under the Supreme Court's latest pronouncement on the question of mootness, this cause was not moot. Division 1287, Amalgamated Ass'n of Street Ry. etc. Employees v. Missouri, 83 S.Ct. 1657.

counsel as no violation of the plaintiffs' rights.

However, it appears from a careful consideration of the complaints that in the background of the alleged agreement is the concept of religious freedom. The plaintiffs made sufficient allegations to raise whatever First Amendment claims they may have, and these legally untrained persons should not be foreclosed from an adjudication of such claims because, in drafting their papers, they specifically spoke only of the agreement which, understandably, was uppermost in their minds. They should not be barred by a strict reading of their pleadings from any relief to which they could show themselves to be entitled in a hearing in which they would have proper representation. See Roberts v. Pegelow, 313 F.2d 548, 549–550 (4th Cir. 1963); Lee v. Hodges, 321 F.2d 480 (4th Cir. 1963). Giving their complaints a reasonably liberal reading, as we should, it is clear that they have stated claims upon which relief could be granted. Sewell v. Pegelow, 291 F.2d 196 (4th Cir. 1961); see Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191 (4th Cir. March 25, 1963); Lee v. Hodges, 321 F.2d 480 (4th Cir. 1963). Thus we necessarily return to what is for me the controlling question: Could it be expected, under the requirements of due process, that these plaintiffs, appearing without counsel, would obtain a procedurally fair adjudication of their rights?

In the first place, there is the abstract legal issue as to whether, and if so how far, the enjoyment of religious freedom, which is guaranteed by the First Amendment, may be circumscribed for prison inmates. To raise and effectively to present this important issue competent professional advocacy is required. Secondly, this need arises even before the actual hearing of a complaint. In fact, before a complaint can be formulated the skill of a lawyer is indispensable to conduct a proper investigation and examination of the relevant facts. The pertinent facts relate to the peculiar dietary restrictions of the plaintiffs' religion, with which the court could not be prepared to deal without extensive pre-trial preparation of counsel. The same is true of the facts pertaining to the functioning of the prison kitchen. Only after proper investigation and ascertainment of all such information could the court undertake to consider to what extent there may be a balancing of the plaintiffs' religious rights against administrative necessity or convenience. Such determination should not be made upon *ad hoc* presumptions.

It is significant that the prison officials obviously considered the plaintiffs' requests not wholly unreasonable. They did shift the major meal from midday to evening; they did delay the evening meal until after dark; they did serve the morning meal before daybreak. The officials, however, relied upon the Naval Observatory determinations of the occurrence of sunrise and sunset. The plaintiffs, on the other hand, insisted upon a religious test established in their holy book, the Koran. To those who are not versed in their ritualistic requirements the distinction may appear foolish; but the same may be said of the fasts and feasts and many other religious practices of more traditional denominations. The actual time difference in the application of the two standards is likely not great, presenting no significant administrative complications. But to the plaintiffs the religious significance of that slight difference may well be critical. A full adversary proceeding would be necessary for a proper understanding and determination of whether the plaintiffs' additional demands are entitled to deference.