William B. Lawless, J.
This matter was remitted by order of the Appellate Division, Fourth Department, with instructions to determine any factual issues raised by the answer as well as the legal problems raised, if any. (People v, Brabson, 21 A D 2d 748.) Said order treated the petition herein as verified (GPLR 7804, subd. [e]). Petitioner originally sought to review the action of the respondent Warden in his alleged failure to provide adequate dental and medical attention.
Pursuant to the order of the Appellate Division, hearings were held in the courthouse at Warsaw, County of Wyoming, on October 16, 1964 and November 19, 1964. At the hearing, petitioner sought to expand his request for relief and prayed this court to grant motions for medical and dental examinations by physicians and dentists outside the prison, moved against prison regulations, moved to restore time lost for assisting fellow prisoners in preparing writs addressed to the courts, moved to amend the petition to claim compensation for alleged malpractice of the dentists employed by the State of New York at Attica State Prison, sought a recalculation of his time and finally, as the hearing was concluding, served the court with a writ.
After the petition concerning medical care was remitted to Special Term by order of the Appellate Division, described above, the petitioner applied to Honorable Carmah F. Ball, Justice of the Supreme Court, Erie County, New York, contending that petitioner’s civil and constitutional rights were violated by the respondent and his agent employees. By order dated September 11,1964, Justice Ball transferred the applica *288 tion to Special Term of the Supreme Court held in Wyoming County and this court took proof with regard to the alleged civil rights violations at the same time it heard proof on the claim relating to alleged inadequate dental treatment.
We shall consider only the two questions originally presented by the pleadings, namely, whether adequate prison dental treatment was provided petitioner and, second, whether petitioner’s civil rights were violated by the Warden who, under a claimed right of censorship, intercepted various communications prepared by the prisoner and placed them in the prisoner’s file instead of mailing them.
I.
CLAIM OF INADEQUATE DENTAL TREATMENT
Petitioner has failed to establish any fact which would constitute cruel and inhuman treatment by the respondent or those subject to his direction. A dental examination of the prisoner on October 6, 1964 indicates that his mouth appears healthy but that lower remaining teeth should be removed and dentures made. The prison dentists indicate their willingness to undertake this work in the regular course of their prison assignment provided the prisoner applies therefor. The only incident suggesting inadequate service relates to treatment the prisoner received from a Dr. Frederick Schwartz, former dentist at Attica State Prison, who served that institution from 1959 until his retirement in 1963. On April 5, 1963, Dr. Schwartz operated upon the mouth of the petitioner. Thereafter prisoner complained of draining and pain, and on or about May 14, 1963, the prisoner complained to the dentists of the care received and according to Brabson the dentist replied that he would not treat him because he was a notorious ‘ ‘ writ writer ’ ’. Dr. Schwartz testified that on that date Brabson refused treatment and he (Schwartz) was not disposed to give him treatment. Thereafter and on August 28 a second prison dentist, a Dr. Brown, X-rayed petitioner and removed the stump of a tooth from the abscessed area. The petitioner admitted that during the period following his exchange of words with Dr. Schwartz he did not attempt to receive further dental treatment.
The claims of the prisoner based upon alleged cruel and inhuman treatment and alleged failure to provide adequate dental and medical treatment are not substantiated by the evidence, are dismissed and all relief sought with respect thereto is accordingly denied.
*289 II.
INTERCEPTED COMMUNICATIONS
The petitioner claims that his civil rights have been denied him in that on various occasions, respondent intercepted communications from the prisoner to the Attorney General of the United States, to the head of the Civil Rights Division of the Department of Justice, writs to the courts, letters to the prospective publisher of his biography, and other communications, particularly letters to his assigned counsel.
Respondent Warden testified on November 16, 1964, that it was his policy and that of his employees to pass for censorship any communication from a prisoner addressed to a duly constituted court and that it was also prison policy to censor all incoming and outgoing mail in accord with rule 50 of the Inmates’ Rule Boole. (State of New York, Department of Correction, revised Jan. 1, 1961.) That rule provides that before permission will be given to an inmate to write letters and receive mail, he must sign an order authorizing the Warden or his agent to open and read his outgoing and incoming mail and to withhold such as he may deem proper. The Warden further testified that pursuant to rule 47 of the Inmates’ Rule Book, letters may be written to and received from the approved list of relatives and such others as may he approved hy the Warden. (Emphasis added.) He testified that there is no other rule, regulation or directive concerning communication by prisoners but he admitted that on some occasions he confers with the State Commissioner of Correction concerning the interpretation of the rules in question. The Warden further testified that he had, pursuant to rule, read letters from petitioner addressed to the Attorney General of the United States and to Mr. Burke Marshall, then head of the Civil Rights Division, United States Department of Justice, that he declined to mail same and that he put them in the “ central file ” of the prisoner. He explained that the letters were never mailed for the reason that they concerned rights of the prisoner otherwise protected, in his opinion, by pending petitions to the courts. The Warden admitted that a letter to Richard E. Moot, Esq., court assigned counsel, was intercepted and not mailed because of the prisoner’s alleged misstatement concerning an assertion that a guard had ransacked his cell and confiscated his property. The Warden admitted that he did not advise Mr. Moot that this letter had been withheld at the prison.
The petitioner’s complaints relate to four types of interception, viz.: (1) communications to courts; (2) communications to *290 counsel; (3) communications to public officers in the executive branch of the Federal and State Governments, and (4) communications with publishers and persons not concerned with the administration of justice.
I.
We recognize that prison authorities have the right to examine and in some cases censor mail passing to or from the prison. The Department of Correction and its various Wardens are permitted to take such reasonable steps as will guarantee the prison security at all times. However, it is fundamental that the State and its officers may not abridge or impair petitioner’s right to apply to a court for appropriate relief (Ex Parte Hull, 312 U. S. 546, 549). It has been said that prison authorities must not in any way deny prisoners the freedom of communication with the courts. (State ex rel. Jacobs v. Warden of Maryland Penitentiary, 190 Md. 755, 757.) Our Court of Appeals has said that an individual once validly convicted and placed under the jurisdiction of the Department of Correction is not to be divested of all rights and abandoned by the remainder of society (People ex rel. Brown v. Johnston, 9 N Y 2d 482, 485).
We find as a fact that the Warden has not intercepted or withheld any writ addressed to the courts. Indeed, the prison records of petitioner’s correspondence indicate that he has in fact been permitted to mail voluminous writs and correspondence addressed to various courts and Judges.
II.
Second, with respect to petitioner’s communication to counsel, we find the respondent Warden overreached his authority and in fact intercepted communications addressed to Richard E. Moot, Esq., without notifying counsel of that fact. The more recent cases dealing with a prisoner’s attempt to communicate with counsel hold that such a right does exist. In McCloskey v. State of Maryland (337 F. 2d 72, 74-75 [C. A. 4th, 1964]), the court stated that prison officials should not interfere with correspondence designed to secure legal assistance. In Fulwood v. Clemmer (206 F. Supp. 370, 376 [D. D. C.]), the court held that petitioner was clearly entitled to send and receive from his counsel communications as to his parole and any alleged violations of his rights as a prisoner. It has been held that a prisoner may communicate derogatory or critical statements about prison authorities to his counsel. (Matter of Ferguson, 55 Cal. 2d 663, 667, cert. den. 368 U. S. 864 [1961].) It has been held that the right of prison officials to inspect communications *291 between prisoners and their attorneys “ should not be used unnecessarily to delay communications to attorneys or the courts since such delay would amount to an effective denial of a prisoner’s right to access to the courts ” (Bailleaux v. Holmes, 177 F. Supp. 361, 364, revd. on other grounds sub nom. Hatfield v. Bailleaux, 290 F. 2d 632; Ex Parte Hull, supra; Spires v. Dowd, 271 F. 2d 659 [C. A. 7th, 1959]; Haines v. Castle, 226 F. 2d 591, 594 [C. A. 7th, 1955], cert. den. 350 U. S. 1014 [1956]; Warfield v. Raymond, 195 Md. 711 [1950]).
III.
Third, with respect to communications addressed to the United States Attorney General, the head of the Civil Rights Division of the United States Department of Justice and other executive officers of the Federal and State Governments, we find that the Warden overreached his authority for the reason that communications with Government officials charged with enforcing the laws, including the civil rights acts, are in the nature of communications addressed to the courts themselves since these men are officers of the court or public officers charged by law with enforcing and administering the law.
The prisoner has the right to communicate with appropriate executive authorities (State ex rel. Jacobs v. Warden of Maryland Penitentiary, 190 Md. 755, 757 [1948]). “Of course, prison authorities must not in any way prevent freedom of communication with the courts, with executive authorities or with counsel ”. That this is necessary is illustrated by the role of the Attorney General of the United States. This Federal officer has the duty of enforcing the Federal civil rights laws through the United States Attorneys. (U. S. Code, tit. 5, § 317; tit. 42, § 1987.) The Federal civil rights acts have been held to apply to prisoners. (Sewell v. Pegelow, 291 F. 2d 196, 198 [C. A. 4th, 1961]; Siegel v. Ragen, 88 F. Supp. 996, 998 [U. S. Dist. Ct., N. D. Ill., 1949], affd. 180 F. 2d 785 [C. A. 7th, 1950].) It follows that claims of denials of rights so protected must be communicated to the proper officials if proper enforcement of the law is to be achieved.
IV.
With respect to letters to business associates and others, not related to law-enforcement agencies, the Warden has a broader discretion. In Stroud v. Swope (187 F. 2d 850 [C. A. 9th, 1951]), the so-called “Bird Man” of Alcatraz demanded an order restraining the Warden from unlawful interference with his business interests. Apparently, the Warden intercepted *292 certain letters mailed by Stroud to Ms business agents which were described as “ defamatory, scurrilous and abusive The court held that the prisoner was not entitled to carry on business affairs representing efforts to secure publication of a book or to engage in general business correspondence with outside parties to promote and further this interest. The court refused to review on the ground that if honored, this request would force the courts to examine the reasonableness of each restraint made by the Warden in this kind of correspondence. It felt that such relief if granted would bring a flood of applications to the courts which would seriously hamper the administration of the prison system. (See, also, United Stales ex rel. Wagner v. Ragen, 213 F. 2d 294 [C. A. 7th, 1954].)
CONCLUSION
Although we have attempted to classify the various cases concerning intercepted communications as they relate to petitioner, there is no convincing proof in the record before us that the prisoner suffered loss of good time due to any incident arising from the failure of the Warden to censor and relay communications to the Attorney General, officials of the Department of Justice or others. Therefore, it is not necessary to restore time lost. We recognize that where a prisoner has been prevented from complying with requirements for taking or perfecting an appeal by the wrongful conduct of prison authorities, he is entitled to adequate redress (People v. Hairston, 10 N Y 2d 02), but there is no proof of such loss of right in this case. We do, however, instruct and direct the respondent to cease and desist from intercepting, obstructing or otherwise delaying any communication addressed to any court, to any law-enforcement agency, to any executive official of the Federal or State Government, and to the prisoner’s attorney. We shall consider future violations, if established, a basis for further proceedings herein.
Except for the relief expressly granted herein, all other applications made prior to, at the time of, and after the hearing, are denied.