Lawrence William **WRIGHT**, Plaintiff,

v.

Daniel **McMANN**, as Warden of Clinton
State Prison, Defendant.

Civ. No. 66–CV–77.

United States District Court
N. D. New York.

Aug. 31, 1966.

Lawrence William Wright, petitioner pro se.

Louis J. Lefkowitz, Atty. Gen., State of New York, William D. Bresinhan, Asst. Atty. Gen., Albany, N. Y., of counsel, for defendant.

## MEMORANDUM DECISION AND ORDER

BRENNAN, District Judge.

Defendant moves to dismiss the complaint for failure to state a claim upon which relief may be granted. The ultimate question here requires the determination of the legal sufficiency of the use of the Civil Rights Act as the basis of this court's jurisdiction in an action at law by a state court prisoner, based upon alleged mistreatment in the execution of punishment for breaches of rules designed to maintain prison discipline.

This is one of the continuous flood of applications by state prisoners which seek some form of relief, from the federal courts, apparently occasioned by the expanded concept of an individual's constitutional rights as delineated in recent authoritative decisions. That the vast majority of such applications are without merit does not relieve the court from the burden imposed. Rather it creates a situation which threatens to engulf especially small two-judge district courts within whose territorial jurisdiction a large number of state prisoners are confined. Either more rigid guide lines must be furnished to such courts or the practice of a denial without memo or explanation will follow if judicial business is to be performed within a reasonably expedient time period. It is sufficient to refer to the five page opinion of Judge Hall in Roberts v. Barbosa, D.C., 227 F.Supp. 20, as an example of the type of action which prompts the above statements. In that litigation, the state-confined plaintiff, in a fifty page complaint, sought a judgment of over $2,500,-000. against forty-four defendants, including jailers, judges and jurors, basing his right of recovery upon alleged encroachments upon his civil rights.

It is noted that plaintiffs in this district, similarly situated, are no longer content with a declaration of their rights

but additionally seek large money judgments apparently invoking a jury trial with its attendant expense and delay. This strategy may well be designed to avoid the requirement that state administrative remedies must be exhausted as held in United States ex rel. Wakeley v. Commonwealth of Penn., D.C., 247 F. Supp. 7 even though the literal reading of Supreme Court decisions might otherwise indicate. Under such conditions, the appointment of counsel, the procurement of witnesses and the disruption of prison routine pose practical problems where, as here, such a trial must be held at a place two hundred or more miles from plaintiff's place of confinement. The attractiveness of suing one's jailer at the expense of the Government is apparent even if the chance of recovery is small.

In justice to the plaintiff, it should be stated that his complaint, although rather lengthy, may be said generally to be well and neatly prepared and his supporting briefs or memos indicate an understanding of the legal problems presented, together with more than the ordinary legal research to be expected from a layman. This results without doubt from plaintiff's intelligence and experience together with the acknowledged aid of the "Legal Aid Clinic" of Cornell University. Correspondence with the plaintiff also shows a definite waiver of counsel in the matter of this motion similar to plaintiff's like waiver in the Appellate Division in his appeal cited below. The pertinent background of facts is set out below.

Plaintiff is presently confined at Clinton State Prison, a maximum security penal institution located at Dannemora, New York under a sentence of from one day to life, imposed upon his conviction by a jury verdict of three counts of sodomy, two counts of assault and carnal abuse of a child. An eleven year old boy was apparently the complainant. People v. Wright, 16 N.Y.2d 736, 262 N. Y.S.2d 113, 209 N.E.2d 728. The judgment was affirmed October 29, 1964 with a short memo. People v. Wright, 22 A.D.

2d 754, 253 N.Y.S.2d 653 and by the Court of Appeals on July 9, 1965. People v. Wright, supra. The Supreme Court denied certiorari June 6, 1966. Wright v. New York, 384 U.S. 972, 86 S.Ct. 1864, 16 L.Ed.2d 683.

The present lengthy complaint is summarized as follows. Jurisdiction is based solely upon the provisions of 28 U.S.C. § 1343, 42 U.S.C. §§ 1981, 1983 and 1985. Two separate incidents furnish the background for plaintiff's claim for relief. On February 18, 1965, plaintiff was confined in "solitary confinement" upon the direction of the Deputy Warden because of a violation of a prison regulation. In the course of carrying out the order, two named officers of the institution assaulted plaintiff by "slapping, striking and kicking him". Profane language was used by the officers who threatened him with violence and he was placed in a barren, dirty and unsanitary detention cell without clothing "for several days". He was required to remain standing "each time an officer appeared" from 7:30 A.M. to 10:30 P.M. and was subject to cold temperature by reason of the opening of the windows in the area "throughout the evening and night hours". Plaintiff was denied the use of law books and legal documents for six and one-half days and use thereof was limited until March 26, 1965, thereby handicapping the prosecution of pending legal proceedings. His right to attend religious services was denied as was the use of his personal prayer books for an unstated period of time. Letter complaints were written on March 18 and April 5, 1965 to various state and local officers and courts, including the Federal Bureau of Investigation. The action produced no results except that after investigation and interview of the plaintiff, the F. B. I. found no violation of the federal criminal law. On March 18, 1965, a verified document was submitted to this court which requested principally that a warrant issue for the arrest of the Deputy Warden on account of the facts alleged above. The application was denied March 24, 1965. Plaintiff's final

allegation as to the occurrence of February 18, 1965 is to the effect that in April 1965 the defendant, in conspiracy with his subordinate officers, caused plaintiff to be confined for three days in an observation cell and subjected to psychiatric examination which resulted in a finding of "no psychosis".

The second incident bears a marked similarity to the above. On February 10, 1966, the plaintiff was again ordered by a Deputy Warden to be subjected to confinement because of an infraction of a prison rule. The physical assault upon his person was limited to his seizure by the collar and being forced against the wall of a building. The conditions of his confinement in the detention cell are alleged as similar to those referred to above. He was deprived of the use of his legal materials for two days and was denied the right to attend religious services.

Injunctive relief and a money judgment in the amount of $10,000. summarize the prayer for relief.

It may be stated at this point that this court is well aware, from previous applications, of the working of prison procedures in imposing and executing the punishment of solitary confinement and segregation upon prison inmates. The court is also aware of the fact that while summary judgment may be granted in this type of action, the allegations of the complaint are subject to factual dispute by the answer and submitted affidavits. It has been determined to reject all affidavits submitted here and limit the decision to the sufficiency of the complaint and thereby avoid the necessity of the repetition of known factual conditions in each of the increasing number of similar complaints.

Interpreting the complaint broadly, as we must, plaintiff's right to recover here appears to rest upon the contentions that he has suffered at defendant's hands, a deprivation of his constitutional rights because of the nature of the punishment imposed and the absence of procedural due process in the determination that plaintiff had in fact violated prison rules or regulations.

■ Before discussing the above contentions, the apparent invocation of the conspiracy section of the Civil Rights Act will be disposed of. In paragraphs 13 and 28 of the complaint, plaintiff alleges in a conclusive manner that defendant, in conspiracy with subordinate officers, maintains the "solitary confinement unit" at the prison, as a place of arbitrary punishment and that such a conspiracy existed in the matter of the confinement of plaintiff in an observation cell for psychiatric examination, all of which was intended to harass him in the enjoyment of his constitutional rights. The later claim for relief plainly lacks the factual allegations of overt acts for its support. Perhaps the above statement would apply to the claim as to the use of solitary confinement as a means of punishment. The use of such means is specially provided for by state law. New York Correction Law, McKinney's Consol.Laws, c. 43, Section 140. In any event, the claim does not legally invoke the provisions of 42 U.S.C. § 1985(3) since no discrimination against the plaintiff in the matter of the action taken is alleged. Birnbaum v. Trussell, 2 Cir., 347 F.2d 86.

■ It is beyond argument that federal courts may not interfere by court decree with the internal management of state prisons. This general rule has its exceptions, especially as to the exercise of the rights of prisoners to the practice of their religion and to petition the courts for relief. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030; Pierce v. LaVallee, 2 Cir., 293 F.2d 233; Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034; Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215. See Matter of Brabson v. Wilkins, 45 Misc.2d 286, 256 N.Y.S.2d 693 for discussion of prisoner's mailing privileges. No authoritative decision is found however which indicates that the federal courts may assume the role of co-administrator of state prisons in matters

of ordinary prison discipline, initiated by the conduct of an inmate.

The present status of the law, as understood from reported decisions, without doubt has prompted state court prisoners to assume that recent decisions have opened the door to federal court appraisal of every infliction of disciplinary punishment imposed. This assumption proceeds upon the theories that each punishment is prohibited by the Civil Rights Act or is a violation of the Eighth Amendment as to cruel and unusual punishment. The provisions of the amendment is to be measured by "the evolving standards of decency that mark the progress of a maturing society". Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed. 2d 630. Plaintiff then proceeds to argue that since the Eighth Amendment is applicable to the states (Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758), the states' interest in controlling the internal discipline of its penal institutions "must give way when a federally created and protected civil right is allegedly infringed". Redding v. Pate, D.C., 220 F.Supp. 124 at 128.

The facts here and the application of the law thereto must be evaluated against the background of the state statutes designed to regulate the control of its prison population and the rules and regulations promulgated in pursuance thereto. New York Correction Law, Section 112. Punishment by solitary confinement to obtain "submission or obedience of any prisoner[s]" is authorized, subject to the daily examination by a physician of the health of the inmate so punished. Correction Law, Section 140. Physical assault upon a prisoner is forbidden unless in self-defense, but officers of the prison are permitted to use "all suitable means * * * to enforce observation of discipline". Correction Law, Section 139. The Commissioner of Correction has the control of state prisoners in the matter of discipline. Correction Law, Section 112. He is directed to make rules as to the discipline of each prisoner for the guidance of officers and employees and may make inquiry into alleged improper conduct on the part of prison personnel. In this state, wardens of its prisons must have a background of qualifications and experience in correctional work. Correction Law, Section 18. Rules and regulations are provided for his guidance as indicated above. Each institution is subject to visitation and inspection at any time by any member of a commission whose duty it is to investigate the management of each institution as to the conduct of its officers, the sanitary condition of its building, the care, treatment and discipline of its inmates. Correction Law, Sections 46, 47 and 48. Finally, it would seem that plaintiff, subject to court approval, may bring an action against prison officers or employees because of their action or non-action in the matter here involved. Correction Law, Section 6–b. The time limitation here has not expired. Court of Claims Act, Section 10, subdivision 5. The statutes cited comprise a complete scheme whereby prison discipline is to be maintained and at the same time the humane treatment of inmates is assured. The plaintiff here has failed to test in the courts of the state the sufficiency of same.

It appears from the above that plaintiff's claim here arises because the officers acted not under the authority of state law but in spite of it. The misuse of power, possessed by state authority, is held to be actionable under the circumstances disclosed in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. Plaintiff urges that the above holding applies to matters involving prison discipline. The necessity for the use of punishment as a means to the enforcement of discipline in the management of the internal affairs of prisons is not only recognized by statutes but is supported by an unbroken line of judicial precedents. Plaintiff's contention that recent decisions have rendered such precedents obsolete would seem to lack support.

In 1961, Judge Clark in Pierce v. La-Vallee, supra, recognized the existence of a line of cases which held that a state court prisoner, complaining of improper

prison treatment, must seek his relief in the state court. The decisions referred to were explained at least in part as not involving the violation of a constitutional right. The repeated citation of such decisions here is unnecessary but it may be noted that United States ex rel. Atterbury v. Ragen, 7 Cir., 237 F.2d 953, which in many respects is similar to this complaint, is frequently cited in subsequent decisions. The holdings referred to above are followed and in fact emphasized as late as March 1966, at least in the Seventh Circuit in Walker v. Pate, 356 F.2d 502, in which the court indicated that persistent appeals by state court prisoners, seeking relief from prison discipline, would thereafter be disposed of in a summary manner. Such holdings are not limited to the above circuit. Neither are they foreclosed by Supreme Court holdings relied upon by plaintiff. See Kostal v. Tinsley, 10 Cir., 337 F.2d 845, where it was held that solitary confinement may properly be used to enforce prison discipline. See Childs v. Pegelow, 4 Cir., 321 F.2d 487 at 489 and cases cited. Kirby v. Thomas, 6 Cir., 336 F.2d 462; Cole v. Smith, 8 Cir., 344 F.2d 721; Ruark v. Schooley, D.C., 211 F.Supp. 921; Threatt v. State of North Carolina, D.C., 221 F.Supp. 858; Talley v. Stephens, D.C., 247 F. Supp. 683. (The last two cited cases involve the whipping of prisoners apparently authorized by statute or rule). Temple v. Pergament, D.C., 235 F.Supp. 242. In the last cited case, the decisions in United States ex rel. Hancock v. Pate, 223 F.Supp. 202 and Redding v. Pate, D.C., 220 F.Supp. 124, upon which plaintiff relies, are distinguished. Our own Circuit Court of Appeals apparently has not directly passed upon the question under discussion but its approach thereto seems to be foreshadowed by the following quotation taken from Sostre v. McGinnis, 2 Cir., 334 F.2d 906 at 908—"No romantic or sentimental view of constitutional rights or of religion should induce a court to interfere with the necessary disciplinary regime established by the prison officials". A quotation from Childs v. Pegelow, supra, then follows

and the above quotation continues—"A prisoner has only such rights as can be exercised without impairing the requirements of prison discipline". This quotation is followed by a quote from Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356.

This court concludes that reported decisions up to date hold that except in extreme cases, the courts will not interfere with the enforcement of rules designed to enforce prison discipline or maintain prison security for the ultimate benefit of both the public and the inmates. The rule is not absolute and is further illustrated by the cases relied upon by the plaintiff. Its elasticity is indicated in a recent decision in our own circuit—Jobson v. Henne, 2 Cir., 355 F. 2d 129. The allegations of the complaint here are nothing more than the routine grievances of one who appears to be unable or unwilling to abide by the rules which the great majority of inmates accept and obey as recognized limitations upon their rights as free citizens. Plaintiff makes no specific allegations of injury. Damages are conclusively alleged and appear to be more theoretical than actual. The impediment imposed upon the practice of plaintiff's religion appears to be nothing more than the temporary withdrawal of the accommodations afforded by prison rules during an unspecified time period and due to the punishment status of the plaintiff. That the plaintiff has failed in allegations of the complaint to bring the claim therein within the exceptions to the above general rule seems apparent. Bryant v. Harrelson, D.C., 187 F.Supp. 738.

Plaintiff leans rather heavily upon the provisions of the Eighth Amendment which forbids the infliction of cruel and unusual punishment as a further basis for his asserted claim and quotes Justice Douglas in Robinson v. State of California, supra, at 676, 82 S. Ct. 1417, to the effect that punishment out of all proportion to the offense may bring it within the ban of said amendment. No all-inclusive rule may be applied. The facts, circumstances and at-

titude of the inmate are relevant factors for consideration. The decision in Redding v. Pate, supra, 220 F.Supp. at 128, cited by plaintiff, expresses doubt that the above provision is encompassed within the allegation of the complaint which seeks relief because of the harshness of prison rules or routine. The amendment was adopted to prevent inhuman, barbarous, or torturous punishment. Black v. United States, 9 Cir., 269 F.2d 38. The decision in Robinson v. State of California, supra, however, adds nothing to the obligation of New York courts since the same prohibitory language is found in its constitution. Bill of Rights, Art. 1, Sec. 5. Every punishment in a sense involves cruelty since it imposes by force conditions at odds with the concept of the freedom of the person from all forms of trespass, and freedom of action. More than this is required to violate the Eighth Amendment. Harvard Law Review Jan. 1966, Vol. 79, Number 3. Until an authoritative interpretation may be made in the future, this court is content to hold that the complaint, which lacks allegations of physical injury, shows no such departure from the accepted methods of prison punishment, is insufficient to invoke the constitutional provision under discussion. The contention in itself bolsters the assertion that New York should be first permitted to evolve its own "standards of decency" prior to federal court interference. Such standards may well be more lenient to the prison inmate than would be imposed by a nationwide decree which could do little more than to fix minimum requirements of the rights of prisoners.

█ Plaintiff's final claim for relief rests upon the contention that he was deprived of procedural due process. Perhaps in the allegations of the complaint such a claim may be found but in any event it is advanced in one of plaintiff's briefs and will be summarily disposed of here.

No claim is made that plaintiff lacked notice of the charge against him and he apparently has forgotten that in his affidavit supporting the application which was denied on March 24, 1965, he affirms that he specifically admitted the infraction of February 18, 1965. The allegation relating to the occurrence of February 10, 1966 is plainly insufficient as it consists only in the allegation that the proceeding was conducted "without being afforded even the slightest element of due process of law".

This court from past experience knows that the presentation of charges of the breach of prison discipline and the disposition thereof are regulated by rules. Again if same are insufficient, the state should be afforded an opportunity to supply the deficiency. The contention is insufficiently alleged and an appellate court may more appropriately decide to what extent, if any, this court will review the procedures adopted in factually determining a violation of prison rules.

The decision here may rest upon either or both of the following conclusions. (1) The complaint makes no sufficient showing of the denial of plaintiff's constitutional rights. (2) Plaintiff's remedy, if any, lies in the state courts.

The first of the above conclusions rests upon the decisions cited above which deny federal interference in the internal management of state prisons. If the above is held to be in error, then we reach number 2. The second conclusion rests upon the rule that Civil Rights legislation "should be construed so as to respect the proper balance between the States and the federal government in law enforcement". Screws v. United States, 325 U.S. 91 at 108, 65 S.Ct. 1031 at 1039, 89 L.Ed. 1495; Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. The general rule that the internal administration of state prisons is the state's primary responsibility and not a matter of federal intervention is admitted here. It is asserted however that the doctrine of abstention has been completely repudiated by late decisions insofar as actions involving Civil Rights are concerned.

█ This court adopts the rationale of the decision in United States ex rel. Wakeley v. Commonwealth of Penn., 247 F.Supp. 7 to conclude that jurisdiction

should be refused here in the absence of compelling circumstances showing that state remedies are ineffective, unduly delayed or subject to prejudice, preventing full relief. See also United States ex rel. McCode v. Commonwealth of Penn., D.C., 246 F.Supp. 801. In Sostre v. McGinnis, supra, a limited abstention of federal jurisdiction was approved even in an action involving the exercise of religious rights and the decision in Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 was cited as indicating an approval of the doctrine in a Civil Rights case.

■■■■ The landmark cases of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281; McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 have not been overlooked. The language of these decisions, dispensing with the requirement that state court procedures must be exhausted prior to the maintenance of federal court action, is broad but has not been applied to actions by state prisoners against their jailers. Such actions, be they in the form of habeas corpus or Civil Rights, possess a background peculiar to the status of the litigants. State action has brought about that status and state authority controls it. State courts should be first given the opportunity to regulate and vindicate that control. None of the three main aims of the Civil Rights Act, as outlined in Monroe v. Pape, supra, is served by denying such opportunity. To hold otherwise "would fly in the face of the experience of the law". United States ex rel. Wakeley v. Commonwealth of Penn., supra, 247 F.Supp. at 10. The thrust of the decisions of the Supreme Court in Robinson v. State of California and Trop v. Dulles is directed to require that punishment imposed by a state may not exceed the requirements of our present society. Such requirements are not static. The "progress of a maturing society" is an essential part of the measure thereof. It seems to be thus implied that the state must measure its punishments within constitutional limits by its own standards of decency since society does necessarily mature evenly in a nation as diverse as ours. On the other hand, the benefits of Civil Rights statutes are intended to be uniform and not to vary from state to state. Basista v. Weir, 3 Cir., 340 F.2d 74. All of the above seems to lead to the conclusion that this type of litigation is not intended to be exempted from the doctrine of the exhaustion of state court remedies.

Undoubtedly the plaintiff may contend that no relief is available to him in the courts of New York. It must be admitted that no precedent is available which clarifies the legal rights of prisoners to relief in New York courts under the circumstances of this complaint. New York, however, has been prompt to implement by statute or judicial decision, federal court holdings, where its inhabitants have been deprived of a constitutional right. Impairment of constitutional rights, imposed upon the plaintiff by prison rule, would seem to be reviewable under the provisions of Article 78 New York C.P.L.R. Matter of Brown v. McGinnis, 10 N.Y.2d 531, 225 N.Y.S.2d 497, 180 N.E.2d 791; Matter of Shaw v. McGinnis, 14 N.Y.2d 864, 251 N.Y.S.2d 971, 200 N.E.2d 636. We find no reported decision construing and applying the provisions of Section 6–b of the Correction Law, referred to above. Absence of such a precedent however cannot be construed as to destroy the vitality of the section. The above section was apparently intended to exempt a type of meritorious action from the prohibition of Section 510 of the New York Penal Law, McKinney's Consol.Laws, c. 40. New types of litigation may well require a reappraisal of the statute law. In any event, the plaintiff should at least present his contention first to the state courts in furtherance of the well recognized principle of comity. The discussion of the availability of a state remedy may be brought to an end by paraphrasing the language found in People v. Guhr, 5 A.D.2d 688, 169 N.Y. S.2d 256. We are confident that New

York courts will find a way if plaintiff can establish his claim that his Civil Rights have been invaded to afford him adequate relief.

A summary of this decision may be expressed as follows. This court holds that no exceptional circumstances are shown in the complaint which would exempt this action from the general rule that federal courts will not interfere with the internal management of the state prisons; that the complaint fails to show a violation of plaintiff's constitutional rights afforded him under either the Eighth or Fourteenth Amendments; that plaintiff must exhaust his state court remedies in this type of litigation before this court may assume jurisdiction and there is no showing that such remedies are unavailable or inadequate.

It is concluded that the complaint fails to state a claim upon which relief may be granted and the motion to dismiss same is granted, and it is

So ordered.